ALAN FREEDMAN vs. BARBARA FREEDMAN.

No. 89-P-389.

Norfolk. April 13, 1990. - August 22, 1990.

Present: PERRETTA, SMITH, & FINE, JJ.

*Divorce and Separation*, Separation agreement, Modification of judgment, Alimony, Child support. *Contract*, Separation agreement.

On appeal from a modification of a divorce judgment reducing the amount of alimony to the former wife, this court declined to consider the question whether the parties' separation agreement survived the judgment and retained its independent legal significance, where the case had been tried on the theory that the judgment of divorce was modifiable upon a showing of a material change in circumstances. [155-156]

The record of a hearing on a divorced husband's complaint for modification of the divorce judgment to reduce alimony payments supported the judge's conclusion that, as many of the expenses paid by a third party, with whom the divorced wife was cohabiting, were duplicative of those intended to be covered by the wife's alimony, the husband had shown a material change in circumstances which warranted modification of the original alimony award; in addition, the judge did not abuse his discretion in reducing the amount of the husband's alimony payments, rather than eliminating them. [158-160]

In a modification proceeding after a judgment of divorce, the judge did not abuse his discretion in the manner in which he fashioned his order requiring the divorced wife to reimburse her former husband money he had provided for insurance premiums. [160]

COMPLAINT for divorce filed in the Norfolk Division of the Probate and Family Court Department on July 9, 1980.

A complaint for modification, filed on April 1, 1988, was heard by *Edward M. Ginsburg*, J.

*Harvey R. Peters* for Alan Freedman.

*Arlene Beth Marcus* for Barbara Freedman.

PERRETTA, J. In 1981, the husband (Alan) and the wife (Barbara) entered into a separation agreement, the terms of which were incorporated into and merged with the judgment of divorce. Based upon the fact of Barbara's prolonged and

continuous cohabitation with a man who contributed to her household and other expenses, Alan, in 1988, brought a complaint seeking a modification of his alimony obligation. The judge treated the separation agreement as having no independent legal significance and found that, as many of the expenses paid by the cohabitor "are duplicative of those intended to be covered by the wife's alimony," Alan had shown a material change in circumstances which warranted a reduction in the amount of his alimony payments by half. On the parties' cross-appeals, Barbara argues that the separation agreement survived the judgment of divorce and should have been enforced. Alan claims that the alimony payments should have been eliminated rather than reduced. Finding neither an error of law nor an abuse of discretion in the judge's decision, we affirm the judgment.

1. *The status of the separation agreement.* Whether a separation agreement survives a judgment of divorce and retains its independent legal significance is a question which turns on the intent of the parties as manifested in the agreement. It is Barbara's argument that although the agreement itself is silent on the question of survival,[1] its detailed and comprehensive clauses give "persuasive indication that the parties intended that it survive. . . ." *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 237 (1987). See also *Knox* v. *Remick*, 371 Mass. 433, 436-437 (1976); *Stansel* v. *Stansel*, 385 Mass. 510, 514-515 (1982). She analyzes the clauses of the agreement as support for her claim, but we do not consider her argument for the following reason.

As here pertinent, the judgment of divorce reads: "[T]he Agreement . . . is incorporated and made a part of this judgment, is merged herein and is deemed to have no independent legal significance. All until further order of the Court." The judgment does not contradict the agreement, see and compare *Moore* v. *Moore*, 389 Mass. 21, 22 (1983), with note 1, *supra*, and there is nothing in the record before

---

[1] The agreement provides: "At any hearing to divorce the parties, a copy of this Agreement shall be submitted to the Court and shall be incorporated and merged into the judgment of divorce."

us which indicates that Barbara ever objected to the form of the judgment. Assuming without deciding that it was open to the judge on Alan's complaint for modification to consider at this late date an attack on a valid (compare *Moore* v. *Moore*, 389 Mass. at 25) provision in the judgment, none was made. The case was presented and tried on the theory that the judgment of divorce was modifiable upon a showing of a material change in circumstances. The appeals, therefore, should proceed on the same theory. See *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 341 (1990), and cases therein cited.

2. *The terms of the separation agreement.* As drafted and signed by the parties, the agreement (and, hence, the judgment of divorce) provides that Alan is to pay Barbara $2,000 a month in unallocated spousal and child support. As each of the parties' two children becomes emancipated at age nineteen (as defined by the agreement and as here pertinent), the amount is to be reduced by $500. Barbara is entitled to earn up to $15,000 a year "without her income giving rise to a modification of the support and maintenance provisions . . . (emphasis supplied)." In the event of Barbara's remarriage after the emancipation of both children, all support from Alan is to cease.

Additionally, Alan is to provide medical insurance for Barbara and each unemancipated child. Notwithstanding a child's emancipation upon age nineteen, the parties are obligated by the agreement to contribute, "to the extent that each is financially capable," to the specifically defined educational expenses of each child up to the time of his and her twenty-third birthday.

At the time of trial on Alan's complaint, the older child was emancipated and, apparently, had completed his formal education. The daughter would attain age nineteen on December 17, 1988. She was a sophomore in college.

To summarize the agreement as controlling at the time of trial, Alan was required, up to December 17, 1988, to contribute to his daughter's educational expenses, to provide her and Barbara with medical insurance, and to pay $1,500 in monthly support. After that date, because of the daughter's

emancipation and because Barbara had not remarried, Alan's support obligation was to be $1,000 per month for Barbara as well as medical insurance.

3. *The material change in circumstances.* There is evidence to support the judge's findings, and we, therefore, relate the facts as he found them to be. At the time of the divorce in 1981, Alan conveyed his interest in the marital residence to Barbara, who assumed responsibility for the mortgage and real estate taxes. Barbara was then working on a part-time basis, receiving annual earnings of $2,600. Her weekly expenses amounted to $582. With the value of the house included, she had a net worth of $101,000.

In 1985, Barbara received a diamond ring from a man she had known for about seven years and which had belonged to his mother. We shall refer to this man as A.B. Neither Barbara nor A.B. regarded the gift of the ring as signifying their engagement to marry. In October of 1987, A.B. moved into Barbara's house with his two daughters, then fourteen and eighteen years of age.

To accommodate A.B.'s daughters, Barbara and A.B. renovated the basement playroom into bedrooms at a cost of $7,000, financed by an equity loan on the house. A.B. earns about $50,000 annually. He pays to Barbara monthly $200 on the equity loan, $537 for household expenses (utilities, mortgage, etc.), and between $258 to $387 for groceries. In addition, he has paid for vacations and some house repairs, given Barbara gifts and small amounts of cash when needed, and allowed her the use of his Mercedes automobile. The judge found that A.B.'s total annual contributions to Barbara exceeded $19,000.

At the time of the hearing on Alan's complaint, Barbara was employed full time, earning $330 a week and receiving, at least since 1983, medical insurance benefits from her employer. She did not advise Alan that she was receiving these benefits, and he was paying her an amount, in addition to support, which he believed was being applied towards the medical insurance benefits he was required to provide.

In addition to her increased earnings, Barbara had purchased a condominium for investment purposes, and she was receiving weekly rental income in the amount of $122. She had savings and an IRA account. Her net worth had increased from $101,000 to $289,000.

In 1981, Alan, a parking lot operator, had an annual income of $59,852, weekly expenses of $390, and a net worth of $85,000. By 1988, his annual salary had increased to $90,000, his weekly expenses to $1,615, presumably due in some measure to his remarriage in 1983, and his net worth had more than quadrupled, to $385,741. His assets were comprised, primarily, of securites. He was also in the midst of divorce proceedings.

Alan contributes $10,000 a year toward the daughter's educational expenses. Barbara also had contributed towards educational costs. The judge noted that Barbara's contributions were a "pay through" for Alan. That is, he received a tax deduction for his support payments to Barbara which she used, in part, for educational expenses.

When Barbara pointed out that if her support were reduced she could no longer contribute to the educational expenses, Alan indicated that if his alimony obligation were eliminated, he would assume full responsibility for the daughter's education.

On these facts, the judge modified the divorce judgment by reducing the support to $1,000 a month until the daughter's emancipation on December 17, 1988, at which time the amount was to drop to $500. Barbara was required to reimburse Alan $5,000 for his unnecessary payments for insurance.

4. *The support modification.* Although there was originally a clause in the separation agreement which provided for an end to alimony after the children's emancipation should Barbara remarry or cohabit "with a member of the opposite sex for a period of at least nine months in circumstances reasonably comparable to marriage," the cohabitation provision was deleted and initialed by the parties at the time they signed the agreement. In any event, the agreement

was incorporated into, and did not survive, the judgment. Therefore, the fact of Barbara's cohabitation with A.B., standing alone, is irrelevant to the issue of her need for financial support. See *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 624-625 & n.8 (1986); *Bush* v. *Bush*, 402 Mass. 406, 412 n.9 (1988); *Palmer* v. *Palmer*, 27 Mass. App. Ct. 141, 147 & n.7 (1989).

But there was more than mere cohabitation and token or inconsequential contributions to Barbara's needs. It is clear from the express language of the judge's findings of fact and conclusions of law that the modification is not based merely upon the cohabitation. Rather, the reduction in support was firmly premised upon her reduced need due to the significant economic benefits that she was receiving from a third party, A.B., with whom she happened to be cohabiting.[2] "[I]f the supporting spouse shows that, as a result of cohabitation, the recipient spouse's economic circumstances have materially changed, then the court may alter or eliminate alimony. However, a judge may not modify a judgment solely on the basis of a finding of cohabitation." *Gottsegen* v. *Gottsegen*, 397 Mass. at 625.

Barbara's contention that Alan failed to prove that A.B.'s payments to her did not exceed the amount necessary to cover the household expenses attributable to him and his daughters is no more than a difference of opinion on the issue of the credibility of witnesses and the manner in which the judge exercised his discretion. See *Schuler* v. *Schuler*, 382 Mass. 366, 370 (1981); *Heistand* v. *Heistand*, 384 Mass. 20, 26-27 (1981).

Equally without persuasion is Alan's claim that the alimony, as modified, is a "disguised form of child support." In reducing the alimony in two stages, the judge was keeping to the spirit of the parties' agreement in respect to child support. It was open to him on the facts and law to consider that although the child would be emancipated as of December,

---

[2]Indeed, the judge pointed out in his findings that should the cohabitation with its attendant economic benefits cease, Barbara may seek a "return to the original level of alimony."

1988, her primary residence would remain that of Barbara. The daughter's presence in Barbara's house would add to Barbara's expenses. See *Larson* v. *Larson*, 28 Mass. App. Ct. at 341-342. Moreover, the judge found that A.B.'s contributions were "duplicative" of many, but not all, of the expenses contemplated by the original support order. It is for that express reason that the judge, rather than eliminating alimony, gave Alan a "corresponding" reduction. There was no abuse of discretion. See *Gottsegen* v. *Gottsegen*, 397 Mass. at 623-624; *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985); *Partridge* v. *Partridge*, 14 Mass. App. Ct. 918, 919 (1982).

5. *The reimbursement of the insurance money.* In requiring Barbara to pay back to Alan the money he provided for insurance premiums, the judge fashioned his order in such a manner that Barbara will not be making a direct payment to Alan. Instead, when the parties' daughter either graduates from college or ceases to make her primary residence that of Barbara, whichever first occurs, then Alan's alimony payments will be suspended until such time as he has recouped the amount owed. Alan argues that he overpaid by more than $5,000. He does not know the exact amount, but he claims that Barbara does or should know. We think it unnecessary to discuss the contention.

Further, Alan claims that he should be given the present value of the past overpayments or interest on that debt. We think it appropriate to note that it appears from all that is before us that from 1981 up to the time of trial on Alan's complaint, the parties have acted with commendable concern for the economic security of their children, notwithstanding their personal differences. Their concern was not overlooked by the judge who crafted his order to comport with their intention that the daughter complete her formal education, and he did so with Alan's tax obligations in mind. We conclude that the judge did not abuse his discretion.

*Judgment affirmed without costs*
*to either party.*