ROBERT M. PARRISH, JR. *vs.* JEAN S. PARRISH
(and a companion case[1]).

No. 90-P-199.

Middlesex. October 4, 1990. - February 5, 1991.

Present: WARNER, C.J., FINE, & GILLERMAN, JJ.

*Divorce and Separation,* Separation agreement, Modification of judgment,
Attorney's fees, Findings. *Contempt. Contract,* Separation agreement,
Construction of contract.

In a divorce action, the probate judge's findings did not adequately support
his conclusion that the parties' separation agreement merged into the
divorce judgment; in the circumstance that the judge had retired, the
matter was remanded for a new trial on the issues raised by the parties
in the modification proceedings. [83-88]

In a divorce action, the probate judge's findings did not demonstrate that,
in considering modification of the divorce judgment, he weighed "all
relevant circumstances"; thus the judgment of modification was re-
versed and the matter remanded. [88-89]

In the circumstances of this court's remand of a divorce action for a new
trial on the issue of a change in the support obligation owed by the
husband, the judgment dismissing the wife's counterclaim was also re-
versed and the question of the payment of additional attorney's fees to
the wife was also remanded for reconsideration. [89-90]

In a divorce action the judge properly dismissed a complaint for contempt
seeking to compel payment for certain expenses that were not part of
the support obligation ordered by the court. [90]

COMPLAINT for divorce filed in the Middlesex Division of
the Probate and Family Court Department on August 5,
1985.

A complaint for modification, filed on November 9, 1987,
and a complaint for contempt, filed on January 29, 1988,
were heard by *John V. Harvey,* J.

*Elizabeth A. Zeldin* for Jean S. Parrish.

---

[1]Jean S. Parrish *vs.* Robert M. Parrish, Jr.

*David E. Cherny* for Robert M. Parrish, Jr.

WARNER, C.J. Once again, we visit the problems created by the use of inconsistent and confusing language in a divorce separation agreement, the resolution of which has critical legal consequences. See *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 239 n. 10 (1987). By a judgment of divorce nisi under G. L. c. 208, § 1A, entered June 30, 1986, the parties were ordered to comply with the terms of an agreement dated May 29, 1986, which was "filed, incorporated and merged" into the judgment.[2] The agreement provided, among other things, that Jean have physical custody of the parties' three minor children and that Robert pay to Jean, as unallocated alimony and support, the sum of $5,800 a month (subject to certain self-executing adjustments). Neither party appealed from the divorce judgment.

On August 18, 1986, Jean filed a complaint for contempt alleging that Robert had failed to comply with various provisions of the judgment. As part of a "Schedule A" attached to her complaint, she also sought (in a section entitled "Modification") to alter the date by which Robert would make alimony payments, or alternatively, the manner in which payment would be made. After Robert filed his answer and a counterclaim, the matter was settled by the parties and an order of dismissal was entered.

The disputes which are the subject of the present appeals began on November 9, 1987, when Robert filed a complaint for modification seeking to reduce his support obligation. He alleged that his income had substantially decreased while his living expenses and "net indebtedness" had substantially increased. In January, 1988, Jean filed a complaint for contempt, alleging that Robert was in arrears in his support pay-

---

[2]The agreement, in Article VI, par. 3, provided, "If, in the future, a judgment should be entered in any action or proceeding between the Husband and the wife for divorce, this Agreement shall be exhibited to the presiding judge before whom such divorce proceedings shall be heard, and counsel for both the Husband and the wife shall request the judge to incorporate this Agreement into the Court's Judgment of Divorce. If this Agreement is incorporated in a final Judgment of Divorce by reference, the provisions hereof shall be merged in such judgment."

ments and had failed to pay, among other things, summer camp expenses incurred by the children in 1987. Shortly thereafter, Jean filed her answer to Robert's complaint, and a counterclaim, in which she alleged that the 1986 agreement was intended by the parties to survive the divorce judgment, but that if modification were to be granted, changes in her own circumstances and those of the children warranted an increase in Robert's support obligation. In his answer to Jean's counterclaim, Robert averred that the parties' agreement merged into the divorce judgment and ceased thereafter to have any independent legal significance.

After consolidation of the cases and trial, a Probate Court judge found that the agreement merged into the divorce judgment and was not intended by the parties to survive as an independent contract, that Robert had suffered a sixty percent reduction in income since 1986,[3] and, consequently, did not have the ability to continue to make support payments as required by the judgment, and that Robert's reduction in support payments was not orchestrated to defeat or frustrate the agreement. The judge concluded that Robert had demonstrated a material change in circumstances which would warrant modification of the divorce judgment and that he should be "credited with payments dating back to the date of service of [his] Complaint for Modification." The judge noted that because of Jean's financial position, she could not pay back the funds to be credited, and left the matter to be addressed by the parties at a later date. The court denied Jean's motion for counsel fees, stating that she had already been awarded $3,000 in order to defend the modification complaint, and (with her attorney) had not proceeded in the matters in good faith.[4] The judge also found that Robert was not in contempt.

---

[3]The judge found that in 1986 Robert's income was $479,787, in 1987 his income was $269,820, and from January, 1988, to June, 1988, he received wages of $63,461, plus rental income of $1,389 and a nonrecurring tax refund of $68,000.

[4]On the latter point, the judge found that the proposed judgment of counsel for Jean "was a misrepresentation to the Court, because it represented that on counsel's best knowledge and belief, there was good evi-

On August 18, 1988, a modification judgment entered which reduced Robert's support payments to $2,500, retroactive to March 8, 1988, and ordered him to pay as additional support for Jean and the children twenty percent of all future bonuses from employment when and as received. The total combined support payments to be made were not, in any one month, to exceed $5,800. Judgments also entered dismissing Jean's complaint for contempt and her counterclaim for modification.

In September, 1988, Robert filed a motion to amend the judgment and Jean filed a motion for relief from the judgment. After hearing, the court entered an amended modification judgment, nunc pro tunc to August 18, 1988, maintaining the base support obligation at $2,500 a month, but revising certain provisions of the judgment (e.g., those pertaining to reductions in support upon the sale of the house or Jean's remarriage) to reflect the new modified support award. The amended judgment also provided that Jean pay to Robert a "sum equal to the difference between all support paid to [Jean] by [Robert] pursuant to the [alimony and support provisions of the agreement and judgment] and Two Thousand Five Hundred . . . Dollars from all time periods from and including January 22, 1988, to the present." There were subsequent postjudgment motions and an amendment of the judgment which are not relevant to our discussion. On August 6, 1989, a single justice of this court stayed the modification judgment, as it relates to alimony and the repayment obligations imposed on the wife, pending determination of the appeal.

On appeal, Jean argues that the judge erred in concluding that the parties' agreement did not survive as an independent contract and was, thus, modifiable. She also argues that certain findings made by the judge are clearly erroneous, that the findings are inadequate in that they fail to show that the

---

dence to support it." The judge stated: "There was no evidence whatsoever that the judgment should not have been modified downward; and there was certainly no evidence to substantiate the proposed judgment of counsel for [Jean], which suggested that the order be increased."

court considered "all attendant circumstances" of the parties and the children, and that, in any event, Robert failed to demonstrate a material change in circumstances sufficient to support modification of the original divorce judgment. Robert rejoins that the judge properly concluded that the agreement merged, in the technical sense, into the divorce judgment, and that, even if the agreement were deemed to have survived the judgment with independent significance, the evidence supports a finding that he had demonstrated "something more than a material change of circumstances."[5]

1. *The status of the separation agreement.* The consequences which flow from the survival or the extinction of a separation agreement have been considered at length in cases such as *Knox* v. *Remick*, 371 Mass. 433, 435-438 (1976); *Stansel* v. *Stansel*, 385 Mass. 510, 512-513 (1982); *Ames* v. *Perry*, 406 Mass. 236, 239-241 (1989); and *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. at 235-236, and there is no reason to rehearse them. It is enough to say that "[i]f an agreement does not survive a judgment of divorce nisi, that is, if it is merged in the judgment in the technical sense, the agreement loses its identity; it retains no independent legal significance apart from the judgment." *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. at 235, and cases cited. In that event, modification of the judgment is governed by the usual rule which requires a showing of a material change of circumstances. *Ibid.* On the other hand, a separation agree-

---

[5]In a supplemental argument, Robert cites *Freedman* v. *Freedman*, 29 Mass. App. Ct. 154, 155-156 (1990), for the proposition that "where there has been no attack on a valid judgment of divorce, and that judgment is consistent with the agreement of the parties, it cannot later be attacked in a modification proceeding." Compare *Moore* v. *Moore*, 389 Mass. 21, 21-25 (1983). *Freedman* does not so hold. In any event, Robert neither alleged in his pleadings nor argued below that it was not open to the judge to consider at the modification hearing an attack by Jean on the language of the judgment. See *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976). To the contrary, the parties put the question of survival or merger to the judge and requested that he make findings on the issue (which he did). We shall deal with the case on the same footing. See *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 341 (1990), and cases therein cited.

ment which fixes interspousal or child support, and which survives a divorce judgment and is valid at the time of entry of that judgment, should be specifically enforced, absent "changed circumstances. . . [which] give rise to counter-vailing equities." *Ames* v. *Perry*, 406 Mass. at 240, 241. *Dennis* v. *Dennis*, 29 Mass. App. Ct. 161, 162-163 (1990). This standard has been properly abbreviated (by *DeCristofaro* v. *DeCristofaro, supra* at 236 n.7) into the shorthand phrase of "something more than a material change of circumstances." *Ames* v. *Perry*, 406 Mass. at 241.

In determining whether or not a parties' separation agreement survives a judgment of divorce, it is the intent of the parties, rather than the inclination of the judge, which controls, see *Moore* v. *Moore*, 389 Mass. 21, 24 (1983); *DeCristofaro* v. *DeCristofaro, supra* at 237; *Freedman* v. *Freedman*, 29 Mass. App. Ct. 154, 155 (1990), and that intent is determined from the whole agreement. *DeCristofaro* v. *DeCristofaro, supra*. Indicia of intent must also be examined in the light of established public policy. "The Commonwealth's strong policy has favored survival of separation agreements, even when such an intent of the parties is merely implied. See *Ryan* v. *Ryan*, 371 Mass. 430, 431 (1976); *Freeman* v. *Sieve*, 323 Mass. 652, 656 (1949); *Welch* v. *Chapman*, 296 Mass. 487, 488 (1937). We have noted that 'it is not lightly to be presumed that a decree, ephemeral in that it could be revised downward at any time, was accepted by a wife as a substitute for an existing agreement.' *Hills* v. *Shearer*, 355 Mass. 405, 408-409 (1969), quoting *Metcalf* v. *Commissioner*, 271 F.2d 288, 292 (1st Cir. 1959). The 'general rule [is that] unless the parties expressly provide otherwise, their separation agreement will be held to survive a subsequent divorce decree incorporating by reference the terms of the agreement.' *Surabian* v. *Surabian*, 362 Mass. 342, 345-346 n. 4 (1972)." *Moore* v. *Moore*, 389 Mass. at 24-25. *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. at 237.

Against this backdrop, we consider the propriety of the judge's conclusion that the separation agreement merged, in

the technical sense, into the divorce judgment.[6] The parties' agreement is detailed and comprehensive. It is thirty-four pages in length and makes provisions for the division of property, alimony and support, custody, visitation, college expenses, medical insurance and expenses, and the maintenance of life insurance by Robert. There are the following clauses: "[T]he Husband and the Wife desire by this Agreement to confirm their separation and to settle between themselves all questions pertaining to their respective property rights, the support and maintenance of the Husband and the Wife, the support, care and custody of the children and all other rights and obligations arising from their marital relationship." — "The parties further agree that, should they become legally separated or divorced in the future, no provision will be made on behalf of either the Husband or the Wife under Chapter 208, section 34, as amended, or any other statutory authority which are inconsistent with the terms and provisions of the within Agreement, except to enforce the provisions of this Agreement." — "[I]t [is] the intention of the parties that henceforth there shall exist between them only such rights and obligations as are specifically provided for in this Agreement." The agreement, which is described as "integrated"[7] and a "Massachusetts contract," also provides: "No modification or waiver of any of the terms of this agreement shall be valid unless in writing and executed by the Husband and the Wife." In DeCristofaro and in Gallerani v. Gallerani, 24 Mass. App. Ct. 927, 927-928 (1987), we held that similar language gave persuasive indication that the parties intended that their separation agreements survive with independent

---

[6]In reaching his conclusion, the judge found that the "terms and provisions of the agreement merged in the Judgment specifically and explicitly in Article VI, Paragraph 3 . . . of the Agreement." He further found that "in reading the entire agreement, it is clear that the provisions of the agreement were to merge in the judgment, were not to survive as an independent contract and were modifiable."

[7]The agreement contains an integration clause. That it was intended by the parties as an integrated (i.e., final) expression of their contract appears not to be in dispute. See Robert Indus., Inc. v. Spence, 362 Mass. 751, 754 (1973). Compare Bettencourt v. Bettencourt, 362 Mass. 1, 9 (1972); Ryder v. Williams, 29 Mass. App. Ct. 146, 149-150 (1990).

significance. Furthermore, the agreement in this case contains no express provision whether it is to survive the divorce judgment. See *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. at 238.

Robert, however, argues that the present case is distinguishable from *DeCristofaro*, as there are extrinsic indicia of the parties' intent which support the judge's finding that the agreement merged, in the technical sense, into the divorce judgment. Specifically, he contends that the parties' use of the word "merged" in the agreement constitutes substantial (although not conclusive) indication of their intent, see *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. at 238; a technical merger is consistent with his testimony at trial concerning his understanding of the agreement;[8] Jean herself sought to modify the agreement in her contempt action filed on August 18, 1986;[9] and Jean took no action in 1986 (or thereafter) to correct the court's "order of approval" under G. L. c. 208, § 1A, or the subsequent judgment of divorce nisi.[10]

---

[8]The parties offered and the judge encouraged and received testimony at trial concerning the parties' "understanding" of whether the agreement merged into the judgment or survived with independent significance. Robert stated that because of the cyclical nature of the mortgage banking business in which he was involved and the concomitant fluctuations in profit it was his understanding that he had the right to modify the agreement if his circumstances changed substantially. Jean testified that because of the fluctuations in Robert's business, "built-in reductions" had been included in the agreement. She stated that it was her understanding that the agreement was a binding contract which could only be changed if there was a "substantial change in circumstances" which she took to mean a "catastrophic injury of a child, or something of that nature."

[9]We note that the "modification" portion of Jean's complaint, which was later dismissed by agreement of the parties, might reasonably be construed as a prayer for relief in the contempt action. The "modification" request makes no allegation of a material change in circumstances.

[10]See note 5, *supra*. General Laws c. 208, § 1A, as amended through St. 1985, c. 691, §§ 1-3, provides that, "The agreement either shall be incorporated and merged into said judgment or by agreement of the parties, it shall be incorporated and not merged, but shall survive and remain as an independent contract." See also *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. at 238 n. 8. On a preprinted form of the Probate Court entitled, "Findings and Order Under M. G. L. Ch. 208, Sec. 1A", the probate judge who reviewed the parties' agreement in 1986 placed an "x" in the box

We agree with Robert that the present case is an appropriate one for consideration of "extrinsic" evidence. The meaning of the word "merged," considering the agreement as a whole, is not free from doubt. Indeed, the agreement was executed prior to our decision in *DeCristofaro* where we stated that "[c]onfusion apparently continues to abound [on the question of merger or survival] perhaps because of the indiscriminate use of language with established legal meaning and consequences." *Id.* at 239 n. 10. See also *Gifford* v. *Gifford*, 354 Mass. 247, 248-249 (1968) (where the court noted that no effort had been made to show mistake in the use of "technical language"). Where contract language employed by the parties leaves their obligations (and, as in this case, the status of the agreement itself) in doubt, the court will place itself in the position occupied by the parties and "will examine the subject matter of the agreement and the language employed, and will attempt to ascertain the objective sought to be accomplished by the parties." *Feakes* v. *Bozyczko*, 373 Mass. 633, 635 (1977). *Goldberg* v. *Goldberg*, 7 Mass. App. Ct. 831, 835 (1979). *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 340-341 (1990). See also *Pavluvcik* v. *Sullivan*, 22 Mass. App. Ct. 581, 584 (1986). "Extrinsic evidence bearing upon the background and purpose of the parties, as well as their understanding of the meaning of particular language used in the contract, may be considered both in the construction of ambiguous contract language and in resolving uncertainties in applying the terms of the written contract to the subject matter."[11] *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 116 (1989). See *Robert Indus., Inc.*

---

preceding the section which provides, "The separation agreement executed by the parties is hereby approved and the same shall have the full force and effect of an order of this Court and is hereby incorporated and merged in this order." The box preceding the section which provides for survival of the agreement as an independent contract was not marked.

[11]Even where an agreement is integrated, evidence may be received and used to elucidate (but not contradict) its meaning in context. *Antonellis* v. *Northgate Constr. Corp.*, 362 Mass. 847, 851 (1973). See *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-755 (1973); *Bettencourt* v. *Bettencourt*, 362 Mass. 1, 9 (1972); *Charing Cross Corp.* v. *Comfed Mort. Co.*, 25 Mass. App. Ct. 924, 925 (1987).

v. *Spence*, 362 Mass. 751, 753-755 (1973); *Rosen* v. *A-H, Inc.*, 17 Mass. App. Ct. 126, 128-129 (1983); *Fred S. James & Co.* v. *Hoffmann*, 24 Mass. App. Ct. 160, 163-164 (1987); *Keating* v. *Stadium Mgmt. Corp.*, 24 Mass. App. Ct. 246, 249-250 (1987); See also Restatement (Second) of Contracts §§ 212 & 214(c) (1981). Cf. *Freeman* v. *Sieve*, 323 Mass. at 654-655; *Gifford* v. *Gifford*, 354 Mass. at 249; *Feakes* v. *Bozyczko*, 373 Mass. at 636-637; *Goldberg* v. *Goldberg*, 7 Mass. App. Ct. at 833-836. Furthermore, "[t]here is no surer way to find out what the parties meant, than to see what they have done." See *Martino* v. *First Natl. Bank*, 361 Mass. 325, 332 (1972), quoting from *Pittsfield & North Adams R.R.* v. *Boston & Albany R.R.*, 260 Mass. 390, 398 (1927); *Keating* v. *Stadium Mgmt. Corp.*, 24 Mass. App. Ct. at 251; *Novel Iron Works, Inc.* v. *Wexler Constr. Co.*, 26 Mass. App. Ct. 401, 409 (1988). "To enable us to understand the subject matter of the agreement, to the extent it is doubtful or ambiguous, we resort to the conduct of the parties to determine 'the meaning that they themselves put upon any doubtful or ambiguous terms . . . .' " *Lembo* v. *Waters*, 1 Mass. App. Ct. 227, 233 (1973), quoting from *Rizzo* v. *Cunningham*, 303 Mass. 16, 21 (1939). *Keating* v. *Stadium Mgmt. Corp.*, *supra* at 251-252. See also *Young* v. *Burkholder*, 142 Ariz. 415, 420-421 (Ct. App. 1984) (involving whether property settlement agreement merged in decree of dissolution); *Small* v. *Small*, 115 A.D. 2d 201, 202 (N.Y. 1985).

In light of the foregoing discussion, we think that the judge's findings in support of his conclusion that the agreement merged, in the technical sense, into the divorce judgment are inadequate. Although the judge received evidence concerning the parties' understanding of the agreement and their circumstances at the time of its execution, the findings give no clear indication whether, or to what extent, the judge considered this evidence (or various other factors referred to by Robert) in reaching his decision. Contrast *Schwartz* v. *Schultz*, 25 Mass. App. Ct. 941, 943 (1988). Where, as here, the parties have put the question of merger or survival to the

judge and the meaning of contractual language employed by the parties is uncertain, we think it important that the judge demonstrate his careful consideration of all pertinent evidence bearing on the parties' intent by making detailed and specific findings thereon. These, of course, require determinations of credibility which we may not make. We note also that, apart from the court's finding concerning the parties' use of the word "merged" in the agreement, the judge did not identify those provisions on which he relied in concluding that "it is clear [from a reading of the entire agreement] that [its] provisions . . . were to merge in the judgment, [and] were not to survive as an independent contract . . . ."[12]

Ordinarily, we would remand the matter to the probate judge with directions that he make further findings and, if necessary, take additional evidence to reflect current circumstances. However, as the probate judge has retired, we reverse the judgment and remand the matter to the Probate Court for a new trial. In the circumstances, a new trial should be limited to the issues raised and argued by the parties at the first modification trial.

2. *The judge's findings of fact on the merits of Robert's complaint for modification.* There is an independent reason why the amended modification judgment must be reversed. The judge's findings of fact on the merits are fatally deficient. In considering modification of the divorce judgment, he expressly employed the "material change of circumstances" standard.[13] See *Schuler* v. *Schuler,* 382 Mass. 366, 368

---

[12]Certain provisions of the agreement envision a continued and active involvement by the court in resolving disputes which may arise between the parties. For example, the agreement provides for mediation and, if necessary, court resolution of disputes involving the payment of college expenses and reasonable and necessary medical and dental expenses. The agreement also provides that neither Robert nor Jean shall remove the residence of any of the unemancipated children from the Commonwealth without the prior written consent of the other parent or the permission of a Massachusetts court of competent jurisdiction.

[13]The judge also found that Robert did not have the ability to continue to make the payments required by the divorce judgment. Where a support provider has demonstrated an inability to pay, a Probate Court support order may be modified to require a lower payment than that agreed to

(1981); *Fugere* v. *Fugere*, 24 Mass. App. Ct. 758, 759 (1987). In determining whether there has been a material change in the parties' circumstances (and whether there has been "something more than a material change") the probate judge "must weigh *all relevant circumstances*" (emphasis supplied). *Schuler* v. *Schuler*, *supra* at 370, 374. See also *Buchanan* v. *Buchanan*, 353 Mass. 351, 352 (1967); *Bush* v. *Bush*, 402 Mass. 406, 411 (1988); *Ames* v. *Perry*, 406 Mass. at 241-242; *Fugere* v. *Fugere*, *supra* at 759-761. In this case, the findings upon which the judge based the amended modification judgment deal almost exclusively with Robert's reduction in income. There are no specific findings concerning the needs, requirements or standard of living of Jean or the parties' children, nor is there any indication that the judge considered whether the substantial reduction in support ordered by him would have a disproportionately adverse impact on Jean and the children.[14] In short, the findings do not demonstrate that the judge considered "all relevant circumstances."[15] We do not intimate that a reduction in Robert's support obligation may not be warranted upon sufficient findings as to all circumstances.

3. *The dismissal of Jean's counterclaim for modification and the denial of her motion for counsel fees.* In view of the

---

between the parties in a separation agreement which is intended to survive a divorce judgment. See *Knox* v. *Remick*, 371 Mass. at 435; *Gallerani* v. *Gallerani*, 24 Mass. App. Ct. at 928 & n. 5. Such a reduction in mandated support payments removes the threat of contempt proceedings against the obligated spouse to the extent of the reduction. *Knox* v. *Remick*, 371 Mass. at 435.

[14]There was evidence that since the entry of the divorce judgment Robert has remarried and started a family with his new wife. He drives an expenses-paid Jaguar automobile, lives in an expensive home with an in-ground pool, and enjoys what might conservatively be described as a comfortable life-style. On the other hand, Jean testified that she has not taken a vacation since the divorce and that some of her expenses have increased. Under the amended modification judgment her monthly mortgage payments will approximate the base amount of support to be paid by Robert.

[15]Also, at least one finding made by the judge, that concerning Robert's income in 1986, was clearly erroneous. A review of Robert's 1986 tax return reveals that his salary was $395,708, and that the *combined* income of Robert and his second wife was $479,787.

decision we reach, the judgment dismissing Jean's counter-claim for modification must be reversed. Furthermore, we remand for reconsideration the question whether Robert should be ordered to pay additional attorney's fees to Jean. See *Fugere* v. *Fugere*, 24 Mass. App. Ct. at 761. "In deciding the question of attorney's fees, the relative financial capacities of the parties are, of course, factors which should be considered." *Id.* at 761-762. See also *Hano* v. *Hano*, 5 Mass. App. Ct. 639, 642 (1977); *Robbins* v. *Robbins*, 19 Mass. App. Ct. 538, 544 n. 11 (1985); *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819-820 (1985).

4. *The dismissal of Jean's complaint for contempt.* Jean's complaint for contempt in which she sought, among other things, to compel Robert to pay for certain summer camp expenses incurred by the children (approximately $2,600) was dismissed. Nevertheless, in the amended modification judgment, Jean was awarded an offset for those same expenses against Robert's support overpayments. Jean now only requests that we "[r]emand the judgment of dismissal of the contempt, directing the court to reflect Robert's obligation to pay $2,600 to Jean in summer camp expenses in the contempt judgment."

Jean conceded at trial that the parties' separation agreement contains no provision requiring Robert to pay the summer camp expenses of the children. Apparently, Robert's "obligation" arose from an oral promise made by him to a mediator.[16] There is nothing before us to indicate that that promise was made part (prior to the entry of the amended modification judgment) of an order of the court. Robert suggests that the judge granted Jean an offset of $2,600 to "equitably enforce" the oral agreement. In the circumstances, we cannot say that the judge erred in this respect in dismissing the complaint for contempt. See *Nickerson* v. *Dowd*, 342 Mass. 462, 464 (1961); *Diver* v. *Diver*, 402 Mass. 599, 602-603 (1988); *Larson* v. *Larson*, 28 Mass. App. Ct. at 340.

---

[16]Jean does not argue on appeal that mediation for summer camp expenses was mandatory under the agreement or that a mediator's recommendation, in itself, became an enforceable court order.

5. *Conclusion.* The amended modification judgment and the judgment of dismissal of Jean's counterclaim are reversed, and those matters are remanded to the Probate Court for further proceedings consistent with this opinion. The judgment of dismissal of Jean's complaint for contempt is affirmed. Neither party is to have costs of appeal.

*So ordered.*