O’Toole, J.
The plaintiff seeks to enforce against the defendant certain provisions of a “Divorce Agreement” entered into by them. On an agreed factual record, both parties have moved for summary judgment. After hearing, the defendant’s motion is allowed, and the plaintiffs is denied.
Contemplating divorce on the ground that there had been an irretrievable breakdown of the marriage, the parties negotiated and entered into a “Divorce Agreement” that is dated February 28, 1979. The parties recited that in executing the agreement they were “desirous of settling their respective property rights and agreeing on all other matters which are now or may hereafter become issues between them.” Agreement, “Statement of Facts,” at 1. The agreement was a detailed one, dealing with such issues as the rights and obligations of the parties in general under the agreement, the disposition of personal property, alimony, child support, life and medical insurance, educational expenses of the child, and custody and visitation.
In Article I (“General Provisions”), Section 7, the parties agreed as follows:
At any hearing on the Complaint for Divorce or Separate Support filed by either party, a copy of this Agreement shall be submitted to the Court at the request of either party and shall, with the approval of the Court, be incorporated and merged in any Judgment for Divorce or Separate Support.
The agreement itself does not explicitly address the question whether the agreement is to survive the judgment of divorce as a separately enforceable contract: it says neither that it shall nor that it shall not.
As a general rule, if the parties have not expressly provided otherwise, their contract will be considered to have survived a divorce judgment that incorporated the agreement by reference. Surabian v. Surabian, 362 Mass. 342, 345-46, n.4 (1972). Where the parties have made a detailed and comprehensive agreement but have not said whether it is to survive the divorce judgment into which it is merged, the strong public policy favoring survival of such agreements combines with the implication that arises from the detail and scope of the contract to produce the conclusion that they intended the agreement to have independent vitality. DeCristofaro v. DeCristofaro, 24 Mass.App.Ct. 231, 237 (1987).
The parties’ intentions with respect to the survival of the agreement, however, may appear not only from the words of the agreement itself but from other pertinent sources extrinsic to the document. Parrish v. Parrish, 30 Mass.App.Ct. 78, 85-87 (1991). In such event, there should be a thorough examination of such extrinsic sources for what information they yield about the parties’ intentions. Id.
In the present case, the parties have submitted an agreed statement of facts, including copies of the divorce judgment and a master’s report which that judgment confirmed. The master’s report in particular sheds further light on the parties’ intentions with respect to the survival or not of the agreement.
The master’s report consists of a two-page general form that can be, and in this case has been, amended to meet the needs of the specific case. For example, as such legal forms often do, the general form includes language covering a number of common possible stipulations; the appropriate ones can be left in, and the inappropriate ones can be stricken out. On the first page, the report form recites that “the following issues hav[e] been addressed and resolved by agreement, to *405 ■wit:" and then lists several specific issues of the kind commonly addressed in such cases, such as custody, visitation, alimony, conveyance of the marital real estate, resumption of former name, and the like. Next to each is a blank box that can be marked if the matter has been dealt with.
Most of the boxes have check marks in them. Two do not. The box next to “conveyance of the marital real estate” is blank, and next to that phrase appears the handwritten word “None.” Similarly, the box adjacent to the phrase “resumption of former name” is blank, and the word “No” is written in beside it. From these facts, it seems incontrovertible that the parties did not provide for the conveyance of marital real estate because there was none, and that the wife did not wish to resume her former name. These conclusions are well founded, even though the propositions are expressed otherwise than in a straightforward declarative sentence.
The last box on the page is marked “other” and has a check mark in it. Underneath, the unedited language of the form recites that the agreement the parties have reached “is to be incorporated and merged and become part of the Judgment and... by agreement of the parties is to survive as an independent contract.” Master’s Report, at 1. In the report involved in this case, a line has been drawn through the latter clause and a period inserted after the word “Judgment.” As with the notations above, this indicates that the optional language contained in the form was considered by the parties and that some was accepted and some rejected.
Moreover, on the next page of the master’s report, there is a paragraph that can be, and in this case has been, marked up and amended, here by inserting the date of the parties’ Divorce Agreement (February 28, 1979) and by lining through language that, if it were to have been left unamended, would have provided that the agreement would survive as an independent contract. (This paragraph also had form language permitting the “spouse” to be allowed to resume her former name, and that was also lined through.)
Both parties signed the master’s report under an acknowledgement that they had read it and that they agreed to its confirmation by the court “in accordance with the terms therein.” Master’s Report, at 2. This can be taken as an affirmation by the parties that they agreed to the terms set out in the report.
Thus, to the question, “Did the parties intend their Divorce Agreement to survive as an independent contract?” The master’s report furnishes the answer, No. It does not say so in a simple declarative sentence, but it says so by way of the editing decisions that the face of the document displays. It says so as plainly with respect to this issue as it says that the plaintiff here did not want to resume her former name.
In sum, if only the Divorce Agreement itself can be consulted to determine whether the parties intended that agreement to survive as an independent contract, then under DeCristofaro’s holding, the agreement would survive. But if, applying the Parrish rule, it is proper to look outside the Divorce Agreement itself to other evidence of what the parties intended, then on the agreed record, specifically the master’s report, it appears that the parties struck out a provision that would have caused the Agreement to survive, and this must be taken as an expression that they did not wish it to do so.
Accordingly, the plaintiff may not enforce the Divorce Agreement in a contract action, and the defendant’s motion for summary judgment in his favor must be ALLOWED. The plaintiffs cross-motion is DENIED.