PATRICIA A. COURNOYER *vs.* GERALD S. COURNOYER, JR.

No. 94-P-1306.

Middlesex. January 9, 1996. - April 19, 1996.

Present: WARNER, C.J., KAPLAN, & IRELAND, JJ.

*Divorce and Separation,* Separation agreement, Alimony, Modification of judgment.

Statement of the standards governing the modification of separation agreements. [305-306]

A Probate Court judge considering a valid separation agreement and two amendments that the parties had agreed to, correctly concluded that, under the standard of either "material change of circumstances" or "countervailing equities," the husband made a showing sufficient to support a modification of the agreement that terminated the husband's obligation to pay alimony as of a certain date. [306-307]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on April 30, 1979.

Complaints for contempt, filed on January 29, 1993, and March 16, 1993, and a complaint for modification, filed on March 16, 1993, were heard by *Edward M. Ginsburg,* J.

*Jane Taubner Barney* for Patricia A. Cournoyer.

*Kendall Burford* for Gerald S. Cournoyer, Jr.

WARNER, C.J. Once more, we are asked to resolve the problems created by the use of inconsistent and confusing language in a divorce separation agreement and amendments, the interpretation of which often has critical legal consequences. See *DeCristofaro* v. *DeCristofaro,* 24 Mass. App. Ct. 231, 239 n.10 (1987); *Parrish* v. *Parrish,* 30 Mass. App. Ct. 78, 79 (1991). Fortunately, however, in this case the precise meaning of the nebulous language is not essential to our decision.

The plaintiff, Patricia Cournoyer (the wife), and the defendant, Gerald Cournoyer (the husband), were married in 1965

and divorced by a judgment nisi of the Middlesex Probate and Family Court on May 2, 1980. A separation agreement, dated June 6, 1979, was not to be "merged into the divorce judgment, but [would] survive the same and be thereafter forever binding upon the Husband and Wife. . . . " Any modification to the agreement was to be signed by both parties.

The agreement provided, among other things, that the wife have custody of their two daughters, and that the husband pay: (1) $500 a month to the wife, as alimony; (2) $250 a month to the wife as child support for their child Jennifer (who was born in 1968), until she attained age eighteen, or completed her formal education; and (3) $250 a month to the wife as child support for their seriously mentally retarded child, Mary (who was born in 1966), until she attained age twenty-two, and if Mary continued to reside at home after attaining age twenty-two, the support would continue in the form of payment equal to the specific expenditures made each previous month on Mary's behalf.

In 1983, the wife, suffering from chronic alcoholism, was unable to care properly for the children, and the custody of the children was given to the husband, first at the Waltham District Court and later in the Probate Court. This unfortunate change in the wife's situation led directly to the first of two amendments to the agreement.[1]

On August 8, 1984, both parties signed an amendment (Amendment I), giving sole legal and physical custody of Mary and Jennifer to the husband, that included the language, "This Amendment is without prejudice to either party seeking to modify any other terms or provisions of the Agreement dated June 6, 1979." The following paragraph stated, "This Amendment shall be submitted to the Middlesex Probate Court, incorporated and merged into a Judgment for Modification." In the same paragraph, crossed out, were words that would have made all terms of the 1979 agreement survive. This was initialed and signed by both parties and accepted by the court. Amendment I did not address alimony payments.

At the time of Amendment I, the husband, remarried in

---

[1]After the change in custody, the wife's alcoholism caused her to make a series of inappropriate telephone calls to the children and the husband. After the issuance of a restraining order, the wife's calls stopped.

1981, had one child by his second wife and was expecting another. Since the change in custody, the husband and his second wife had been complete caregivers for Mary, as well as for the other children, including Jennifer. The wife had no contact with either of her children from early 1985 until 1994, when she was granted limited visitation rights of eight hours a year with Mary.

On June 30, 1986, by temporary order of the Middlesex Probate Court, the husband's obligation to pay child support for both children to the wife was formally vacated, and the husband's obligation to continue alimony payments to the wife was reaffirmed. This order was followed by other temporary orders on July 16, 1986, and March 4, 1987, both of which directed the wife to pay child support payments to the husband.

On July 1, 1987, the parties executed a second amendment (Amendment II) to the agreement. Amendment II, which provided that the wife pay the husband the sum of $260 a month for support and maintenance of Mary, and nothing for Jennifer, as she was not a full-time student, was also by its terms, "incorporated and merged in a Judgment of Modification of the Judgment of Divorce." Amendment II also stated, "Except as amended herein, or as previously amended, [the parties] agree that the terms of their Separation Agreement dated June 6, 1979 shall remain in full force and effect." There was nothing in Amendment II specifying when, and if, child support payments by the wife to the husband should cease.

In September of 1988, Mary attained the age of twenty-two, and the wife ceased making child support payments. In December of the same year, the husband ceased making alimony payments to the wife. In January, 1993, the wife filed a complaint for contempt for unpaid alimony. The husband answered by filing both a cross complaint for contempt against the wife for failing to pay child support, and also a counterclaim for modification on his obligations to pay alimony. The husband also filed a petition for guardianship, requesting that he and his second wife become coguardians of Mary.

The judge, after finding countervailing equities, entered his findings of fact and conclusions of law on the cross complaints for contempt, equity complaint, counterclaim for modifica-

tion, and petition for guardianship. The judge dismissed both parties' complaints for contempt, dismissed the equity complaint, and entered a modification judgment on the counterclaim, which terminated the husband's obligation to pay alimony as of December, 1988. The court also indicated that an amendment to the existing guardianship would be allowed, adding the husband's second wife as coguardian of Mary. The wife now appeals from the probate judge's dismissal of her complaint for contempt and the modification judgment on counterclaim. We affirm.

*The status of the separation agreement.* The ramifications that stem from the survival or extinction of a separation agreement have been considered at length in numerous cases. See *DeCristofaro* v. *DeCristofaro, supra* at 235-236, and cases cited. See also *Ames* v. *Perry*, 406 Mass. 236, 239-241 (1989); *Parrish* v. *Parrish, supra* at 82-83. Thus, here, we rehearse them only briefly.

In short, "[i]f an agreement does not survive a judgment of divorce, that is, if it is merged in the judgment in the technical sense, the agreement loses its identity; it retains no independent legal significance apart from the judgment." *DeCristofaro* v. *DeCristofaro, supra* at 235. Upon merging, modification of the judgment is governed by the usual rule, which requires a showing of a material change in circumstances. *Ibid.* However, if a validly entered separation agreement fixing interspousal support is incorporated in a divorce judgment, but survives the judgment, the agreement retains its force as an independent contract. In that event, the agreement should be specifically enforced, absent "something more than a material change of circumstances," *id.* at 236 n.7, or, as commonly denoted, "countervailing equities." *Ames* v. *Perry, supra* at 241. *Parrish* v. *Parrish, supra* at 83. Under both standards, the petitioner must demonstrate that the change occurred since the entry of the last judgment. *Schuler* v. *Schuler*, 382 Mass. 366, 368 (1981).

In deciphering whether the parties' separation agreement survives the judgment of divorce, it is the intent of the parties, inferred from the entire agreement, rather than the inclination of the judge, that controls. *DeCristofaro* v. *DeCristofaro, supra* at 237. *Parrish* v. *Parrish, supra* at 83. Extrinsic evidence bearing upon the background and purpose of the parties may be considered in the construction of ambiguous

contract language and in resolving uncertainties in applying the terms of the written contract to the subject matter. *Parrish* v. *Parrish, supra* at 86.

In this case, however, no clear intent emerges from the record before us with respect to the two modification amendments, nor did the parties offer any extrinsic evidence that could aid the probate judge or us in contract interpretation. Thus, we are at a loss to discern the ultimate intent of the parties with regard to the status of the original agreement. However, the final status of that agreement does not make a difference to the outcome of this case because under either the "material change of circumstances" or the "countervailing equities" standard, the husband has made a showing sufficient to support a modification of the agreement.

*Countervailing equities standard.* Generally, the more stringent modification standard, "countervailing equities," has been interpreted to include the situation where the party attempting to use the surviving agreement as a bar to modification has not complied with provisions of the agreement. *Knox* v. *Remick*, 371 Mass. 433, 437 (1976). *Stansel* v. *Stansel*, 385 Mass. 510, 515 (1982). Here, the party attempting to block the modification, the wife, has done exactly that — she has stopped making the agreed-upon child support payments for her child, Mary.[2]

In addition, numerous other conditions have arisen since the entry of the last judgment, that together meet the "something more" standard, and serve to show why the wife's claim that the husband failed to meet the necessary criteria to

---

[2]The wife argues that her obligation to pay child support in accordance with G. L. c. 208, § 28, ended when Mary turned twenty-two. The Supreme Judicial Court has noted, however, that the statute, specifically addressing the care and maintenance of "minor" children, does not necessarily reach to adult, incapacitated children. *Feinberg* v. *Diamant*, 378 Mass. 131, 133-137 (1979) (the Probate Court did not have jurisdiction under G. L. c. 208, § 28, to award support by a divorced parent for a mentally incapacitated adult child but instead acted pursuant to its general equity power to decide all matters relative to persons placed under guardianship). Moreover, both parties knew at the agreement's inception that Mary would need constant lifelong care, and thus, in the original agreement and both subsequent amendments, there is no provision explicitly addressing the cessation of child support for Mary. Furthermore, Mary's incapacity existed at the time of her coming of age, a factor that many courts have found influential when determining that an incapacitated adult is unaffected by child support legislation. See *id.* at 134, and cases cited.

modify the judgment is untenable. These conditions include: (1) the husband now has physical custody of Mary; (2) the husband's second wife has recently been appointed coguardian of Mary, cementing both her legal and emotional commitment to Mary; and (3) the wife is self-sustaining, earning $30,000 a year.

Other factors, too, while present in some degree before the entry of the previous judgment, further strengthen the husband's claim. These factors include: (1) the original foundation upon which the agreement was built has shifted with the changed custodial arrangement; (2) the husband and his new family have assumed the responsibility of caring for Mary, who may need constant lifelong supervision and attention; (3) the wife owns the marital home, which has significant equity value with a relatively low outstanding mortgage; and (4) the husband's liabilities greatly exceed his assets, and he has present obligations to the Internal Revenue Service and the State Department of Revenue in excess of $30,000.

Under either standard of modification, the wife's arguments fail. Her contention that she, too, has undergone financial hardship in the past, a factor she claims should ensure her the receipt of alimony, is unpersuasive upon comparing her financial picture with that of her husband. Likewise, the wife's dual arguments that there were no substantial changes since the entry of the previous judgment, and that she was not under an obligation to pay child support for Mary, are to no avail.

*Material change standard.* The same factors that meet the "countervailing equities" standard more easily meet the less rigorous "material change of circumstances" standard. Thus, the probate judge was not clearly in error in finding that both countervailing equities and a material change of circumstances existed that warranted the modification of the judgment of divorce.

*Conclusion.* The order dismissing the wife's complaint for contempt and the modification judgment on the husband's counterclaim terminating the husband's obligation to pay alimony are affirmed.

*So ordered.*