NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-841

Y.A.

vs.

K.B.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Y.A. (mother) and K.B. (father) are the parents of one child born in 2018.  The mother appeals from a judgment issued by a judge of the Probate and Family Court pursuant to G. L. c. 209C.[1]  We affirm.

Background.[2]  The parties began a relationship around 2009, lived together beginning in 2015, and separated in January 2020 when the child was eighteen months old.  After the parties' separation, the child resided primarily with the mother, and the parties had an informal and flexible parenting schedule with the

---

[1] The father did not participate in the appeal.

[2] The mother does not challenge any of the judge's findings of fact as clearly erroneous; we therefore accept them as true. See Altomare v. Altomare, 77 Mass. App. Ct. 601, 602 (2010).

father having the child on alternating weekends, including overnights, and two or three days per week, excluding overnights. The mother filed a complaint pursuant to G. L. c. 209C in March 2022, and the father filed a counterclaim in April 2022. In July 2022, the father's girlfriend, with whom the father lived, gave birth to a child. In August 2022, the judge issued a temporary order that granted the father alternating weekends and midweek parenting time, both including overnights, and awarded the parties shared legal custody. In July and August 2022, the child's preschool teacher informed the mother that she had observed the child to have difficulty sharing, to isolate, and to say mean things to friends. The mother suggested engaging the child in therapy, but the father did not agree until February or March of 2023. The judge found that, "[g]iven the confluence of events relating to Father's second child and the increase in the Father's parenting time, it is hard to determine the actual source of [the child's] struggles at this time but the change in the parenting structure is found to have contributed."

Prior to the entry of judgment, the parties generally worked together to meet the medical and dental needs of the child, but were not always able to reach immediate consensus on enrolling the child in mental health treatment or

2

extracurricular activities.  When the parties were together in the child's presence, they treated each other respectfully.  The child did well in school and enjoyed time with both parents.  After a one-day trial, the judge granted the mother sole legal custody and primary physical custody of the child.  The judge granted the father parenting time, access to the child's providers, teachers, and instructors, and the right to attend all the child's appointments, activities, and events.[3]  The judge ordered the mother to provide the father with access to the child's records and providers and inform him, in writing, before making legal custodial decisions.

Discussion.  "In custody matters, the touchstone inquiry [is] . . . what is best for the child . . ." (quotation and citation omitted).  Malachi M. v. Quintina Q., 483 Mass. 725, 740 (2019).  See G. L. c. 209C, § 10.  "[T]he best interests analysis is a child-centered one that focuses on the specific needs and interests of a child and how these might best be met.  The standard does not focus on purely parental interests . . ." (citation and quotation omitted).  Charara v. Yatim, 78 Mass. App. Ct. 325, 336 (2010).

---

[3] The parenting plan set forth in the judgment maintained the schedule awarded under the temporary order:  to wit, two overnight weekdays and alternating weekends from Friday to Sunday.  This schedule provides the father with close to thirty-eight percent of the parenting time with the child.

"The determination of which parent will promote a child's best interests rests within the discretion of the judge . . . ." Custody of Kali, 439 Mass. 834, 845 (2003), quoting Rosenberg v. Merida, 428 Mass. 182, 191 (1998). The best interests determination is "a classic example of a discretionary decision" as to which "much must be left to the trial judge's experience and judgment" (citations omitted). Adoption of Hugo, 428 Mass. 219, 225 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999). "[A] judge may consider any factors found pertinent to those interests in the circumstances of the dispute," Custody of Zia, 50 Mass. App. Ct. 237, 243 (2000), such as "which parent has been the primary caretaker of . . . the child, the need for stability and continuity in the child's life, [and] the decision-making capabilities of each parent to address the child's needs," El Chaar v. Chehab, 78 Mass. App. Ct. 501, 506 (2010). "We review the judgment and the subsidiary findings of fact for abuse of discretion or other error of law." Murray v. Super, 87 Mass. App. Ct. 146, 148 (2015). See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Here, the mother claims that the judge abused her discretion in granting the father access to the child's records and participation in the child's appointments, in requiring the mother to communicate with the father before making decisions

4

regarding the child, and in granting the father "equalized parenting time."

The mother contends that the breadth of the father's access to and participation in legal custodial issues essentially amounts to shared or de facto legal custody. We disagree. The judge's decision to grant the mother ultimate decision-making authority while keeping the father informed and involved in the child's legal custodial decisions is amply supported by her findings and the record. The child, since birth, has enjoyed time with both parents who provide him with care, affection, and support. Prior to the parties' separation, they shared parenting responsibilities while the other parent worked or attended school. The mother "has been the parent responsible for [the child's] medical and educational decisions and made such decisions successfully." Notwithstanding, the father is actively involved in the child's day-to-day care. The father asked the mother to schedule a medical appointment when the parties had concerns over the child's snoring, which ultimately led to surgery. The father has taken the child to the dentist and, more recently, medical appointments. The father has exercised uninterrupted parenting time since the child's birth and has consistently sought additional time with him. The mother has asked the father to care for the child overnight when

5

she was unavailable, and, on two occasions, has asked the father to care for the child when she was away on ten-day vacations. The father makes meals for the child, bathes him, helps him with his nighttime routine, readies him for preschool, interacts with his preschool teachers, plays with him, speaks with him in Spanish to help him learn the language, and encourages his relationship with the mother. The father pays for the child's soccer program. The child has frequent contact with the father's extended family during the father's parenting time. Keeping the father informed of the child's legal custodial issues such as his medical and dental care, his extracurricular activities, and his education, is consistent with the father's historical participation and does not infringe on the mother's ultimate decision-making authority.

Accordingly, the judge properly considered the parties' respective contributions in determining the child's best interests; therefore, the decision to permit the father's continued access to the child's records and participation in events and appointments, and the requirement for the mother to notify the father in advance of legal custodial decisions are not "outside the range of reasonable alternatives," Macri v. Macri, 96 Mass. App. Ct. 362, 369 n.13 (2019), quoting L.L., 470 Mass. at 185 n.27, and do not constitute an abuse of discretion.

6

The mother also contends that the judge should have considered "countervailing equities" in fashioning the custody award. Cournoyer v. Cournoyer, 40 Mass. App. Ct. 302, 305-307 (1996). That standard is inapposite here. The "countervailing equities," or "something more than a material change of circumstances," standard is applied where specific enforcement of a surviving separation agreement is sought. Id. at 305. The judge did, however, address and account for the conduct that the mother refers to as the father's "fraud" and "unclean hands." The judge gave the mother sole legal custody, rather than the shared legal custody awarded in the temporary order, noting that the temporary order had been based on the father's representations of the prior responsibilities and was not in the child's best interest. The judge also noted that the father had omitted from his financial statement his income for the first three months of 2023, but found that the statement accurately reflected his income at the time of the trial.

Finally, the mother argues that the judge abused her discretion in granting primary physical custody to the mother and also ordering "an equal 50/50 parenting plan between Mother and Father." The mother misreads the judgment. Of the fourteen available overnights during each two-week period, the father was awarded six and the mother was awarded eight. Based on this

7

schedule, the mother is the primary physical custodian of the child.[4]

Judgment affirmed.

By the Court (Blake, C.J.,
Massing & Allen, JJ.[5]),

*Paul Little*

Clerk

Entered: August 26, 2025.

---

[4]"The mother's remaining contentions . . . either do not constitute argument as contemplated by Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), or would not require a reversal of the judgment" (citation omitted). Custody of Zia, 50 Mass. App. Ct. at 248.

[5] The panelists are listed in order of seniority.