CAROL BERCUME vs. RONALD R. BERCUME.

Worcester. October 5, 1998. - January 12, 1999.

Present (Sitting at Greenfield): WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Jurisdiction,* Probate Court, Modification of divorce judgment. *Probate Court,* Jurisdiction. *Divorce and Separation,* Separation agreement, Alimony, Modification of judgment.

A Probate Court judge was not deprived of jurisdiction to determine and award alimony, on a complaint for modification of a divorce judgment, by the existence of an allegedly independent, enforceable agreement between the parties purporting to waive claims of alimony "now and forever." [638]

A party to a separation agreement that by its own terms "merged into" the judgment of divorce, who did not challenge the agreement's incorporated status in proceedings for modification of the judgment, could not claim for the first time on appeal that the agreement survived with independent status. [638-640]

A party who did not challenge the authority of a Probate Court judge to act under G. L. c. 208, §§ 34 and 37, to make an initial award of alimony some fourteen years after the entry of a judgment of divorce, could not raise the issue for the first time on appeal. [642]

In a proceeding to modify a divorce judgment, sufficient evidence supported the judge's finding that the former wife had demonstrated a material change in circumstances warranting an award of alimony [642-643]; however, where it was not clear that the judge took into consideration the parties' separation agreement, merged in the judgment, which clearly expressed their mutual intent to waive claims for alimony, and where there was no consideration of the appropriate period for which alimony should be paid, the matter was remanded for further consideration [643-645].

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on December 8, 1981.

A complaint for modification, filed on March 21, 1996, was heard by *Joseph Lian, Jr., J.*

The Supreme Judicial Court granted an application for direct appellate review.

*Paul M. Sushchyk* for Carol Bercume.

*Wendy H. Sibbison* for Ronald R. Bercume.

MARSHALL, J. Ronald Bercume (Ronald) appeals from a judgment of modification entered by a judge in the Probate and Family Court ordering him to pay weekly alimony of $140 to his former wife, Carol Bercume (Carol).[1] At the time of their divorce sixteen years earlier, the parties signed a separation agreement (agreement) whereby both waived any claim of alimony "now and forever." The agreement also provided that, if found by the court to be proper, it would be "incorporated, merged into and made a part of [this] judgment."[2] The judgment so provided.

Represented by new counsel on appeal, Ronald now argues that the Probate Court lacked jurisdiction to award Carol alimony because the language of the agreement demonstrated the parties' intent that it survive the judgment as an independent contract not modifiable by the Probate Court. He also argues that the judgment is jurisdictionally "defective" because alimony was awarded to Carol without consideration of the statutory factors required by G. L. c. 208, § 34.[3] In the alternative, he argues that the judge's findings do not support his conclusion that Carol proved a material change in circumstances as required by G. L. c. 208, § 37.[4] We granted Ronald's application for direct appellate review. We reject Ronald's jurisdictional claims, and remand the case to the Probate Court for further proceedings consistent with this opinion.

1. *Background facts.* Carol was seventeen years old when she

[1]In the interest of clarity, we use the first names of the parties. They have been divorced for more than sixteen years, Ronald remarried, and any reference to the parties as "husband" and "wife" is no longer appropriate.

[2]Article VIII (F) of the agreement provides: "This Agreement shall be exhibited to the Worcester Probate Court in the pending divorce proceeding and, if found by said Court to be proper, shall be incorporated in the [judgment] of divorce nisi as part of said [judgment] and shall be merged therein."

[3]General Laws c. 208, § 34, provides in relevant part: "In determining the amount of alimony, if any, to be paid . . . the court, after hearing the witnesses, if any, of each party, shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income."

[4]General Laws c. 208, § 37, provides in relevant part: "After a judgment for alimony or an annual allowance for the spouse or children, the court may, from time to time, upon the action for modification of either party, revise and alter its judgment relative to the amount of such alimony or annual allowance and the payment thereof, and may make any judgment relative thereto which it might have made in the original action."

married Ronald in 1965. They had three children over the course of their seventeen year marriage. During the marriage, Carol, who never finished high school, did not work outside the home or attend school. The parties were divorced in March, 1982, at which time Carol was thirty-four years old and the children were fourteen years, thirteen years, and five years old, respectively.[5]

Carol was awarded physical custody of the three children, and they all resided with her until each in turn was emancipated. Ronald paid Carol $150 each week for child support. Carol also sought work outside the home for the first time; she has since been employed full time. The couple's youngest child was emancipated in 1997, at which time, as provided in the agreement, Ronald terminated all child support payments to Carol.[6]

In March, 1996, fourteen years after the divorce, Carol filed a complaint for modification seeking alimony from Ronald. The judge found that, because Carol had raised the three children while employed full time and could not afford the cost, she had been unable to further her education or increase her earning potential significantly. Her employment had been limited to unskilled or semi-skilled jobs, with little room for advancement. At the time of trial, Carol had no assets and earned a net weekly income of $227, but was receiving less than that amount because she was temporarily disabled and receiving disability benefits. There was testimony that Ronald remarried in 1985 and that he has a daughter with his current wife. The judge found that, after the divorce, Ronald had been able to devote all of his time to the growth and success of his business as a builder while Carol was charged with the task of raising the parties' three children. He found that Ronald is now on a secure financial footing: his net weekly income is $627 and he has assets totaling approximately $700,000, for the most part unencumbered. The judge concluded that Carol is in need of spousal support, and that Ronald has the ability to pay her $140 each week in alimony, with a minimal impact on his present standard of living. He ruled that there has been a material change in the circumstances of the parties warranting a modification of the original judgment.

[5]The children were born in May, 1967; August, 1968; and March, 1977, respectively.

[6]As provided in the agreement, there was no reduction in support payments when each of the two older children was emancipated.

2. *Status of the separation agreement.* Ronald's claim that the Probate Court lacked jurisdiction to award Carol alimony because, in his view, the parties intended their agreement to survive the judgment is meritless. The existence of an independent, enforceable agreement does not deprive the Probate Court of jurisdiction to modify its own judgment. See *Stansel* v. *Stansel,* 385 Mass. 510, 512 (1982) (jurisdiction of Probate Court to modify support orders not restricted by surviving agreement between husband and wife purporting to fix support obligations); *Feakes* v. *Bozyczko,* 373 Mass. 633, 634-635 n.2 (1977) (requirement that Probate Court give full effect to intention of parties as expressed in separation agreement does not limit court's power to modify subsequent divorce decree); *Ryan* v. *Ryan,* 371 Mass. 430, 432 (1976) (power of Probate Court to modify its support orders may not be restricted by agreement between husband and wife purporting to fix "for all time" amount of husband's support obligation); *Wilson* v. *Caswell,* 272 Mass. 297, 302 (1930) (parties "cannot by contract deprive the Probate Court of jurisdiction to modify a decree of alimony"). A surviving agreement may prompt a judge "in his discretion" not to modify an order, *Knox* v. *Remick,* 371 Mass. 433, 435 (1976); it is not a jurisdictional bar to the action.

We consider next his claim that the agreement survived the judgment. It has long been the law of this Commonwealth that "[a]greements made while parties are separated may provide for the agreement's termination or continuation after a decree nisi is entered." *Surabian* v. *Surabian,* 362 Mass. 342, 345 (1972). Ronald argues that, notwithstanding the merger provision contained in art. VIII (F) of the agreement, see note 2, *supra,* the agreement is "silent" on whether it is to survive as an independent contract, and that other language of the agreement demonstrates that Carol and Ronald intended that it should survive. Ronald points in particular to three provisions of the agreement: art. I provides that the agreement is "made in order to settle finally and completely all claims of each party against the other"[7]; art. III provides that "[e]ach of the parties hereby waive [*sic*] now and forever any claim of alimony against the

---

[7]Article I, second paragraph, of the agreement provides: "This agreement is made in order to settle finally and completely all claims of each party against the other concerning care and support and division of the property and to settle all other matters which should be settled in view of the Complaint for Divorce which has been filed in connection with this matter."

other"; and art. VIII provides that the parties release all claims against each other.[8] As to the merger provision, Ronald argues (for the first time on appeal) that it is not "dispositive" of the parties' intent, relying on *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 237-239 & n.10 (1987).

The case was not presented or tried on this theory. The judgment of divorce nisi provides that the agreement "shall be incorporated, merged into and made a part of the judgment." There is nothing in the record to suggest that Ronald ever objected to the form of the judgment. He filed an answer to Carol's complaint for modification admitting that the judgment incorporated and merged the separation agreement, but denying Carol's claim that she was unable to support herself on her full-time earnings. Cf. *Parrish* v. *Parrish*, 30 Mass. App. Ct. 78, 79-80 (1991) (despite provision in separation agreement that it would merge with judgment, wife alleged that agreement intended by parties to survive divorce judgment and husband alleged that agreement ceased to have any independent legal significance); *Mansur* v. *Clark*, 25 Mass. App. Ct. 618, 619 (1988) (wife pleaded separation agreement as bar to modification); *DeCristofaro*, *supra* at 233 (in response to complaint for modification husband denied material change of circumstances and alleged that separation agreement at issue survived judgments of divorce and modifications). At the commencement of the trial, Carol's attorney explained to the judge that Carol was seeking to "modify the judgment on the divorce nisi . . . by awarding her a reasonable amount of spousal support, alimony, for her support and maintenance."[9] Ronald's counsel did not challenge that characterization of the hearing, and he waived making an opening statement. The separation agreement was not entered in evidence,[10] and Ronald made no claim that it was

---

[8]Article VIII (A) of the agreement provides: "Except as specifically provided in this Agreement each party has released and discharged and by this Agreement does hereby for himself or herself, and his successors, assigns and executors, administrators and heirs, release and discharge the other of or from any causes of action, claims, rights or demands whatsoever in law or in equity which either of the parties has ever had or now has against the other."

[9]In a single sentence he also told the judge that Carol would testify as to her needs and that he would call Ronald to testify about his financial ability to pay alimony.

[10]In support of his application for direct appellate review and in his appendix filed in this court, Ronald includes a copy of the judgment of divorce nisi to which a copy of the separation agreement is attached. The combined document is marked "Exhibit R. Bercume # 1, 9/23/97." The date of the

the parties' intent that it survive the judgment:[11] he offered no testimony concerning the intent of the parties. In a posttrial memorandum Ronald repeatedly acknowledged that the separation agreement had merged with the judgment, and advanced a theory that the judgment of divorce was modifiable, but only on a showing of "something more than a material change in circumstances" or if Carol could establish "countervailing equities, which have been generally interpreted to mean that [she] would . . . become a public charge," citing *O'Brien* v. *O'Brien*, 416 Mass. 477 (1993), and *Knox* v. *Remick*, 371 Mass. 433 (1976).[12] The appeal, therefore, should proceed on the same theory. *Kagan* v. *Levenson*, 334 Mass. 100, 106 (1956) (theory of law on which case is tried cannot be disregarded when appellate court looks at acts of trial judge); *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937) (same). See *Freedman* v. *Freedman*, 29 Mass. App. Ct. 154, 155-156 (1990); *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 341 (1990).

Although what we have said is sufficient to dispose of Ronald's claim, we think it appropriate to comment further on one aspect of his argument because the subject arises frequently before the judges of the Probate Court of the Commonwealth and is the subject of continuing confusion. See *DeCristofaro* v. *DeCristofaro*, *supra* at 239 n.10 ("The question of merger or survival is of great importance in many situations. Confusion

marked exhibit precedes the trial by several months, and was not offered at the trial.

[11]By way of contrast, in *Parrish* v. *Parrish*, 30 Mass. App. Ct. 78 (1991), the Probate Court was offered and heard testimony from the parties concerning their understanding whether the agreement had merged into the judgment or had survived with independent significance and of the parties' circumstances at that time. *Id.* at 85 n.8, 87. Ronald made no such proffer here. The Appeals Court reversed a finding by a Probate Court judge that the agreement merged in the divorce judgment and was not intended by the parties to survive as an independent contract. Here, because Ronald never raised the issue, the Probate Court judge made no such finding. The Appeals Court noted, "the parties put the question of survival or merger to the judge and requested that he make findings on the issue (which he did). We shall deal with the case on the same footing." *Id.* at 82 n.5, citing *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 341 (1990).

[12]In a posttrial memorandum to the Probate Court, Ronald framed the "issue" to be decided by the judge as follows: "Has the Plaintiff established grounds which would warrant the modification of a separation agreement which was incorporated, merged into and made a part of a divorce judgment, under the terms of which the Plaintiff specifically waived any claims for alimony . . . ."

apparently continues to abound, perhaps because of the indiscriminate use of language with established legal meaning and consequences"). See also *Cournoyer* v. *Cournoyer,* 40 Mass. App. Ct. 302, 302 (1996) (same). The distinction between merger and survival of an agreement is settled.[13] A separation agreement that provides expressly that it is to merge in a judgment is *not* silent on the question of survival:[14] the merger of an agreement in a judgment is a substitution of the rights and duties under the agreement for those established by the judgment or decree. If an agreement survives a judgment or decree, on the other hand, the rights and duties it establishes are enforceable at law by the parties without regard to the judgment. An agreement cannot both lose its legal identity and retain legal significance independent of a judgment. Article VIII (F) of the agreement is not ambiguous. In plain terms it states that the separation agreement previously reached by Carol and Ronald is to be incorporated and merged in their divorce judgment. "A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." *Citation Ins. Co.* v. *Gomez,* 426 Mass. 379, 381 (1998). Article VIII (F) is not susceptible of more than one meaning.

There may be circumstances in which a separation agreement contains a provision that is explicitly contradictory regarding its continuing legal significance — for example a provision that an agreement will "merge" with the judgment *and* "survive" as an independent contract. At most, Ronald could have claimed — but did not — that the unambiguous provision for merger contradicted other provisions of the separation agreement. See *Cavanagh* v. *Cavanagh,* 33 Mass. App. Ct. 240, 242 (1992). At the very least a party in Ronald's position must plead and offer

---

[13]"A separation agreement may specifically provide that it shall no longer continue in effect if its provisions are incorporated in a subsequent divorce proceeding. *Fabrizio* v. *Fabrizio,* 316 Mass. 343 [1944]. On the other hand, the agreement may state that it is not to be affected by a divorce decree, in which case the rights under the agreement survive the decree and are enforceable. *Schillander* v. *Schillander,* 307 Mass. 96 [1944]. *Whitney* v. *Whitney,* 316 Mass. 367 [1940]." *Hills* v. *Shearer,* 355 Mass. 405, 408 (1969).

[14]In *DeCristofaro* v. *DeCristofaro,* 24 Mass. App. Ct. 231, 238 (1987), the separation agreement contained a provision that it was to be "incorporated and merged" in the judgment. The Appeals Court noted that the agreement "contain[ed] no express provision whether it was to survive the judgment of divorce." To the extent the opinion suggests that a merger provision is silent as to survival, we do not agree with it.

to present specific evidence to a trial judge that unambiguous language of merger does not mean what it says.[15] But where, as here, the parties agreed that the agreement was to merge with the judgment, we see no reason why the provision should not be given effect.

3. *The application of G. L. c. 208, § 34.* Ronald also argues that the Probate Court did not have the power to award Carol alimony under G. L. c. 208, § 37. See note 4, *supra.* Section 37 permits a court to enter an order for modification after a judgment "for alimony." Because Carol was not awarded alimony in the divorce decree, Ronald claims that her complaint for modification should have been treated as a petition under G. L. c. 208, § 34.[16] Ronald did not make this argument in the Probate Court. To the contrary, he acknowledged the court's authority to act under G. L. c. 208, §§ 34 and 37. Ronald answered Carol's complaint for modification. He did not request an evidentiary hearing on the findings required by G. L. c. 208, § 34. At the trial he did not offer any evidence to support such findings. In his posttrial memorandum he did not propose any findings or rulings of law under G. L. c. 208, § 34. It avails Ronald little to fashion his argument here as one of "jurisdiction." Had Ronald intended to seek the benefit of G. L. c. 208, § 34, he should have presented that issue to the Probate Court judge. We are not inclined to disregard the theory of law on which the case was tried in the Probate Court. See *Kagan* v. *Levenson, supra* at 106.

4. *The sufficiency of the findings.* The agreement between Carol and Ronald, incorporated and merged in the judgment, defines in some detail the rights and obligations of the parties. In assessing Carol's claim of changed circumstances, what

---

[15]Both Carol and Ronald were represented by counsel in their divorce: their agreement so recites, and they each were "fully informed of his or her legal rights or liabilities" (art. VIII [D]). Ronald has never claimed that the language of art. VIII (F) was a mistake or contradicted his own understanding of the document.

[16]The pertinent portion of G. L. c. 208, § 34, provides: "Upon divorce or upon a complaint in an action brought at any time after a divorce, whether such a divorce has been adjudged in this commonwealth or another jurisdiction, the court of the commonwealth, provided there is personal jurisdiction over both parties, may make a judgment for either of the parties to pay alimony to the other. In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other . . . ."

weight, if any, should the judge have given to Carol's earlier agreement that she waived alimony "now and forever?" In the Probate Court Ronald argued that, although merged, the agreement should be "specifically treated with respect" and that he should be entitled to "the benefit of his bargain" unless Carol could establish a substantial change in circumstances or "countervailing equities." See *O'Brien* v. *O'Brien*, 416 Mass. 477 (1993). Viewed through the prism of the agreement, Ronald claims the judge unfairly held him responsible for Carol's poor life choices, that she could have pursued further education or training at least after 1987 when their two older children were emancipated. Carol responds that, forced to work full time at low wages while she was raising her children, she could not afford to and was unable to pursue her education,[17] and that her resulting lack of marketable skills and her age now weigh heavily against her.

A party seeking to modify a judgment for alimony or child support "must demonstrate a material change in circumstances since the entry of the earlier judgment." *Schuler* v. *Schuler*, 382 Mass. 366, 368 (1981), citing *Robbins* v. *Robbins*, 343 Mass. 247, 249 (1961). "In determining whether to modify a support or alimony order, a probate judge must weigh *all* relevant circumstances" (emphasis added). *Schuler* v. *Schuler*, *supra* at 370. The judge found that sixteen years ago, when the parties made their agreement, Ronald was in serious financial difficulties. The judge also found that Ronald's financial circumstances had improved in part because he had had "the luxury" of devoting one hundred per cent of his time to the growth and success of his business. Carol in contrast was preoccupied with raising children while working. There was sufficient evidence to support these findings.[18] We nevertheless conclude that the judge failed to give adequate consideration to the parties' earlier intention to circumscribe their financial involvement with each other.

---

[17]At trial Ronald made no attempt to challenge Carol's testimony that her attempts to further her education had been unavailing because of her circumstances, nor did he attempt to establish that alternatives existed and were in fact available to her.

[18]The trial judge found: "Because [Carol] was raising the children and engaged in full-time employment, [she] was *unable* to further her education and *therefore* unable to increase her earning potential significantly" (emphasis added). The finding is supported by the evidence, and is in any event not specifically challenged by Ronald. On appeal, he simply argues that Carol "could" have done better.

We have recognized the public policy that favors the survival of separation agreements. See *Moore* v. *Moore*, 389 Mass. 21 (1983). We have done so observing that a judge should respect "the desire of the parties to determine their destinies." *Id.* at 24. Where an agreement does not survive, it is nevertheless appropriate for a judge to take heed of the parties' own attempts to negotiate terms mutually acceptable to them. A judge who modifies a divorce judgment does not write on a tabula rasa. To the extent possible, and consistent with common sense and justice, the modified judgment should take into account the earlier, expressed desires of the parties. Carol may have underestimated the difficulties she would face as an uneducated woman working full time while raising her children.[19] We credit her testimony, as did the judge, that these difficulties were real.[20] But her children are now grown — a reality that the modified judgment does not recognize. As matters now stand, Ronald is obliged once again to support Carol, and the judgment reflects no expectation that Ronald's support of Carol will end at any time.

At the time of separation, a divorcing spouse may fully intend to, and agree to, forgo spousal support, and yet bargain to merge the agreement with the judgment so that changed circumstances — unexpected or not reasonably anticipated — do not leave him or her powerless later to modify the agreement. This may be an entirely appropriate way for parties to proceed, especially where minor children are involved, for it may be nigh impossible to plan for every future set of circumstances. The result may impose burdens on divorcing spouses long after they reasonably believe that they are free of obligation to each other. But in this Commonwealth we recognize that the termination of a marriage, in particular one involving children or of lengthy duration, may have consequences long after the date of divorce. See *Talbot* v. *Talbot*, 13 Mass. App. Ct. 456, 459 (1982).

---

[19]It is also possible that because of the parties' dire financial circumstances at the time of their divorce, Ronald did not have the financial ability to pay alimony or other support to Carol so that she could obtain further training. The judge recognized that Carol remained locked in poverty: as the full-time, single parent of three children, she was not able — as was Ronald — to devote herself to advancing her employment.

[20]The judge reported his findings, and we have a transcript of all the evidence. Accordingly, "the appeal brings before us all questions of law, fact, and discretion." *Krokyn* v. *Krokyn*, 378 Mass. 206, 208 (1979), quoting *Cohen* v. *Murphy*, 368 Mass. 144, 147 (1975).

In this case, it is not clear that the judge took into account the parties' earlier desire, expressed in their agreement, that all financial obligations between them would terminate after the emancipation of their youngest child. In fairness to the judge, the theory that Ronald advances on appeal was barely touched on at the trial. Ronald did not suggest to the judge that any relief awarded should be of limited duration or conditional. He argued only that Carol should be denied *all* relief unless she could prove that her change in circumstances made her eligible for public assistance. There was no obligation on the judge to accept that argument: that is not the standard applicable for agreements that have merged in the judgment. We are unable to ascertain from the record whether a judgment providing spousal support for Carol for a specified time is feasible or, in this case, consistent with justice or common sense. The parties' earlier agreement warrants consideration of that question, and it is appropriate that this be done in the first instance by the trial judge.

We reject Ronald's other challenges to the findings of the judge, that the evidence on which they were based was speculative and that Carol's calculation of her net income was inaccurate. Nevertheless, because the judge's order was based on financial statements submitted more than one year ago, the judge may wish to order the parties to submit new financial statements so that he can more accurately evaluate the circumstances of each party in light of any further changes that have occurred since the trial.

The judgment of modification is vacated and the case is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

*So ordered.*