Kirpalani, Maynard M., J.
INTRODUCTION
Plaintiff Douglas Reed filed this action against ex-wife Karen Luther alleging breach of contract based on an agreement to reduce the amount of his weekly alimony payment. This matter is before the court on Luther’s motion to dismiss with prejudice pursuant to *235 Mass.R.Civ.P. 12, which this Court (Henry, J.) ruled on June 30, 2011 should be treated as a motion for summary judgment. For the reasons discussed below, the motion for summary judgment is ALLOWED.
BACKGROUND
As revealed by the summary judgment record, the undisputed facts and the disputed facts viewed in the light most favorable to the plaintiff as the non-moving party are as follows. Reed and Luther were married on April 12, 1980. On July 24, 2008, Luther filed for divorce in the Essex Probate and Family Court. On November 9, 2009, Reed and Luther entered into a Separation Agreement which provided that Reed would pay Luther alimony of $1,100 per week and 22.5% of any bonus earned from his full-time employment. At that time, Reed was employed at SEA Consultants, earning an annual salary of $174,876, and Luther was unemployed. The Separation Agreement further provided that when Luther obtained employment, Reed’s alimony payment would decrease by $1 for every $4 she earned. Paragraph 6 of the Separation Agreement states: “A copy of this Agreement shall be submitted to the Court and incorporated in a Judgment of Divorce. The provisions related to asset/liability division shall survive the Judgment of Divorce. All other provisions shall merge in the Judgment of Divorce and may be changed or modified by an order or judgment of modification.” The parties were divorced on November 9,2009 upon entry of a Judgment of Divorce Nisi entered in the Essex Probate and Family Court. The divorce judgment incorporated the Separation Agreement, which required Reed to pay Luther $1,100 per week in alimony.
On November 22, 2009, Reed was laid off from his employment with SEA Consultants. He received severance pay through February 23, 2010, and continued to make his $1,100 weekly alimony payment until March 5, 2010. Reed paid Luther no alimony in April and May of 2010. On June 10, 2010, Reed became employed at Fuss & O’Neil, earning an annual salary of $131,040. On that date, Reed contends that he and Luther agreed to a downward adjustment of Reed’s alimony obligation to $600 per week beginning the week of June 7,2010. Luther denies entering into such an agreement.
Between June 25,2010 and October 29, 2010, Reed paid Luther only $600 per week. On June 29, 2010, Luther filed a complaint for contempt against Reed in the Essex Probate and Family Court for failure to pay her alimony of $1,100 per week. On July 21, 2010, Reed filed a complaint for modification in the Probate and Family Court, seeking a reduction in his alimony payment due to changed circumstances.
Reed contends that on September 8, 2010, he and Luther agreed that he would pay her only $800 per week in alimony. Luther denies any such agreement. By e-mail dated September 8, 2010, Luther wrote to Reed:
I think we should only look at the alimony amount at this time. Once I am employed then I am glad to change other requirements. I don’t have your finan-cials but from what I remember your base pay was 175k and now is 140k. If you reduce alimony by the same percentage it would be $880. So maybe $800/week is a good amount. Since you are under court order to pay higher amount how do we take care of the amount past due? Do you want to pay Michael’s tuition or pay back amount over a long period of time? If we go to court the judge would order it paid but I don’t want it to be that huge burden or go to court. I need to know by Thursday about the past due amount. I am flexible and don’t want to see judge court order a lump sum.
Reed responded with an e-mail stating:
Karen, I cannot qualify for a mortgage at that rate. My base pay is $131,000.1 have to live near Boston to get a high paying job and even a small ranch in a medium town like Reading and Medford is about $450,000. A modem condo costs even more. So, proportioning the alimony to my income does not work.
I would like to eliminate the bonus pay clause. In November I actually left the courtroom over that clause and I should not have come back. Huge mistake. That haunts me more than anything because that links my alimony to my future business performance . . .
If we cannot agree on other terms, than [sic] we are certain to be back in court again someday . . .
Luther replied with an e-mail stating:
I can’t [sic] buy a condo even unless I am at 800. Reed responded:
How about this. Make it $750 and get rid of the bonus clause. My mortgage broker said I need alimony close to $700 to get a mortgage for the house that I put an offer on last week (but they didn’t accept it anyways). If you are short a little to qualify for a mortgage to buy that Vt. condo, I can front the Woodard & Curran money to you, which is due me in January and will be about $20,000. I can’t go much higher as I need down payment money too . ..
Luther replied:
“start at 750 and lets [sic] see if I can qualify for something. Thanks.”
Reed responded:
OK. But when we go on the 20th I want to make the other changes too. The $750 depends on the other changes being okay too. You will be able to qualify. Also, if you get any kind of paying job, it will put you over the top, even a minimum wage job.
Luther replied:
the 20th is a contempt hearing. I don’t think you can just go in and do something else.
*236 Reed responded:
I think we have a lot of flexibility on when we go in.
The next morning, Luther replied with an e-mail which stated:
I am very comfortable cutting back on alimony.
In October of 2010, Luther began to work as a paid volunteer, earning $100 per week. Because of the contempt complaint, beginning on October 26, 2010, Reed began paying Luther the full $1,100 per week alimony. However, Reed failed to pay Luther 22.5% of his $5,000 signing bonus with his new employer.
On January 3, 2011, the Essex Probate and Family Court (Manzi, J.) held a hearing on the Complaint for Contempt. During that hearing, Reed’s counsel stated:
[W]e have a situation in which if there is a finding of contempt against Mr. Reed, that will automatically generate a complaint in equity be filed seeking damages based on detrimental reliance on an agreement between the parties, which I do understand from a contempt legal analysis an agreement between the parties even if it is commemorated in informal writings — emails — in and of itself doesn’t change [the] Court Order.
And it’s represented to me and corroborated through the emails that the parties had an understanding, that Mr. Reed relied on that understanding to his detriment, that it was a communication — and I believe, as far as the contempt, Your Honor, the reason I share this with the Court is because it goes to the willfulness on the part of Mr. Reed.
The judge then replied, “I’m not going to be hearing that . . . We have a Judgment of Divorce here.” Following the hearing, the Court found Reed in contempt and ordered him to pay Luther $22,400 in alimony arrearages, $ 1,125 for the signing bonus, and $2,045 for her legal costs. On January 26, 2011, Reed tiled a notice of appeal of the contempt action with the Appeals Court. On February 4, 2011, Reed filed a Motion for Temporary Orders on his Complaint for Modification, which the Essex Probate and Family Court (Manzi, J.) denied on March 4, 2011.
On April 11, 2011, Reed filed the complaint in this action, alleging breach of contract in Count I, seeking to recover in promissory estoppel in Count II and for unjust enrichment in Count III, and seeking declaratory relief in Count IV. As of the filing of this lawsuit, Reed’s complaint for modification was still pending in the Probate and Family Court, although a trial initially was scheduled for July 22, 2011.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving parly is entitled to judgment as a matter of law. Mass.RCiv.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Luther contends that she is entitled to judgment as a matter of law because Reed cannot premise a breach of contract action on an alleged agreement to modify the terms of a Probate Court alimony order. It is well established that the parties to a separation agreement may provide that the agreement will survive the entry in Probate Court of a divorce decree which incorporates by reference the terms of the agreement. Krapf v. Krapf, 439 Mass. 97, 103 (2003); Hayes v. Lichtenberg, 422 Mass. 1005, 1006 (1996); Moore v. Moore, 389 Mass. 21, 24-25 (1983). When the parties provide for survival, the separation agreement remains a valid and independent contract, and either party may file suit in the Superior Court to specifically enforce its terms or to recover damages for its breach, without regard to the divorce judgment. Krapf v. Krapf, 439 Mass. at 103; Bercume v. Bercume, 428 Mass. 635, 641 (1999); Moore v. Moore, 389 Mass. at 24-25. In such a case, the Probate Court generally will not modify the obligations voluntarily undertaken by the parties. Taverna v. Pizzi 430 Mass. 882, 886 (2000); Bercume v. Bercume, 428 Mass. at 638; Mansur v. Clark, 25 Mass.App.Ct. 618, 620 (1988).
In light of the strong public policy favoring voluntary resolution of issues such as property division, alimony, and child custody and support, the general rule is that a separation agreement will be held to survive a subsequent divorce decree unless the parties expressly provide otherwise. Surabian v. Surabian, 362 Mass. 342, 345 n.4 (1972); DeCristofaro v. DeCristofaro, 24 Mass.App.Ct. 231, 237 (1987). Here, however, it is undisputed that the parties’ Separation Agreement expressly provided that provisions such as those relating to alimony would merge into the final divorce decree. When a separation agreement merges into the decree, it loses its identity and retains no independent legal significance apart from the Probate Court judgment: the parties’ rights and duties as established by the divorce decree substitute for those established under the agreement. Pierce v. Pierce, 455 Mass. 286, 302 (2009); Bercume v. Bercume, 428 Mass. at 641; Halpern v. Rabb, 75 Mass.App.Ct. 331, 339 (2009). Accordingly, the Probate Court retains the authority to modify provisions of the agreement, including those concerning alimony, upon a showing of a material change in circumstances. Bercurne v. Bercume, 428 Mass. at 640; Whelan v. Whelan, 74 Mass.App.Ct. 616, 619 (2009); Harris v. Harris, 23 Mass.App.Ct. 931, 932 (1986).
*237 Reed argues that in suing Luther for breach of contract, he is not relitigating the separation agreement, which undisputedly merged into the divorce decree, but rather, seeks to enforce a subsequent, independent agreement with Luther concerning alimony. He has failed, however, to cite any authority for the proposition that absent a surviving separation agreement, the parties to a Probate Court order for alimony can modify their alimony arrangement by contract, without court approval. See Imprescia v. Imprescia, 392 Mass. 101, 106 n.4 (1984) (stating, without deciding, that “the validity of a private agreement between husband and wife made subsequent to a judgment of divorce which purports to change the financial obligations of the parties, but which is never brought before the Probate Court or approved as a modification of the original order is at least open to serious question”); Mahoney v. Mahoney, 65 Mass.App.Ct. 537, 541 (2006) (declining to reach merits of husband’s claim that post-divorce agreement which parties intended to satisfy divorce judgment was valid defense to contempt complaint). Cf. Krapf v. Krapf, 439 Mass. at 99 n.2; Broome v. Broome, 40 Mass.App.Ct. 148, 149 (1996) (noting that parties to separation agreements which survived divorce judgments could later modify various provisions).
If, as Reed contends, he and Luther have agreed that his alimony obligation should be less than that ordered in the divorce decree, it appears that the proper remedy is to jointly seek a modification of the judgment in the Probate Court. See Imprescia v. Imprescia, 392 Mass. at 106 n.4. See also Bercume v. Bercume, 428 Mass. at 644; Bracci v. Chiccarelli, 53 Mass.App.Ct. 318, 325 (2001), rev. den., 436 Mass. 1101 (2002) (noting that even where separation agreement does not survive divorce decree, court should respect parties’ desire to determine their destinies in considering any modification).[1]
Moreover, the cases Reed cites for the proposition that the parties may litigate issues arising from their divorce simultaneously in Probate Court and Superior Court involve separation agreements which expressly survived a divorce decree. See, e.g., Broome v. Broome, 40 Mass.App.Ct. at 151 (Superior Court had jurisdiction to declare parties’ rights and duties with respect to child support where separation agreement survived divorce decree); Binder v. Binder, 7 Mass.App.Ct. 751, 758 (1979) (following modification of alimony obligation in Probate Court, wife could sue in Superior Court to recover arrearages under separation agreement which survived divorce decree).[2] Thus, Luther has established that she is entitled to judgment as a matter of law on Reed’s breach of contract and related claims.
In her June 17,2011 motion to dismiss the complaint, Luther argued that Reed’s claims are wholly insubstantial, frivolous and advanced in bad faith, citing G.L.c. 231, §6F, and requested an award of attorneys fees. On September 6, 2011, Luther filed an affidavit of attorneys fees documenting $4,431 in fees and costs. Chapter 231, Section 6F provides in relevant part:
Upon motion of any party in any civil action in which a. .. decision, award, order or judgment has been made by a judge . . . the court may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the claims ... whether of a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith. The court shall include in such finding the specific facts and reasons on which the finding is based.
If such a finding is made with respect to a party’s claims, the court shall award to each party against whom such claims were asserted an amount representing the reasonable counsel fees and other costs and expenses incurred in defending against such claims.
For purposes of this statute, a claim is not wholly insubstantial and frivolous if although ultimately unavailing, it is supported by a marginally colorable foundation. Boston Pilots v. Motor Vessel Midnight Gambler, 357 F.3d 129, 136 (1st Cir. 2004). Moreover, good faith implies an absence of malice, design to defraud, or design to seek an unconscionable advantage. Hahn v. Planning Bd. of Stoughton, 403 Mass. 332, 337 (1988).
A motion for fees and costs under G.L.c. 231, §6F is a collateral matter separate from the judgment in the underlying litigation. Ben v. Schultz, 47 Mass.App.Ct. 808, 812-13, rev. den., 430 Mass. 1109 (1999). The facts that are pertinent to the §6F determination are not necessarily the same as the facts on which a determination of the merits are based, and the §6F proceeding requires a separate finding of fact. Id. at 814. Accordingly, this Court declines to address Luther’s request for attorneys fees until she obtains from the clerk a hearing on that collateral matter.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s Motion to Dismiss/Motion for Summary Judgment be ALLOWED.

This remedy appears to be consistent with the parties’ intent, insofar as the Separation Agreement originally contained a paragraph stating: “The provisions of this Agreement may not be changed or modified except by a written instrument signed and acknowledged in duplicate by the Wife and the Husband, or by an order or Judgment of Modification entered in the Essex Probate and Family Court on the issues which merge in the Judgment of Divorce,” but the parties crossed out this paragraph and initialed the change prior to execution.

Under certain circumstances, courts have concluded that the proper administration of justice calls for the disposition in the Probate Court of all claims relative to the consequence of a separation agreement, even where some such claims might properly be brought in Superior Court. See, e.g., Knox v. Remick, 371 Mass. 433, 438 (1976); Tompkins v. Tompkins, 65 Mass.App.Ct. 487, 491 n.7 (2006).