## Janice Coppinger vs. Daniel Coppinger.

No. 00-P-1197.

Norfolk. March 22, 2002. - April 2, 2003.

Present: Duffly, Kass, & Trainor, JJ.

*Divorce and Separation,* Alimony, Modification of judgment, Attorney's fees. *Contempt. Practice, Civil,* Contempt, Attorney's fees.

The judge at a compliance hearing on a complaint for contempt arising from a divorce action erred in entering a judgment that had the effect of reducing the husband's alimony obligation under an agreement that had been incorporated into but had survived the judgment of divorce, where the judge made no findings reflecting a demonstration by the husband of something more than a material change in circumstances or countervailing equities, and where the record lacked evidence that would support such findings [712-713]; moreover, this court remanded the case for reconsideration of the judge's award of attorney's fees and entry of the necessary findings to support any reduction in the wife's request for reasonable attorney's fees [713-714].

Complaint for divorce filed in the Norfolk Division of the Probate and Family Court Department on September 8, 1980.

A complaint for contempt, filed on March 12, 1999, was heard by *Eileen M. Shaevel,* J., and a judgment of contempt and supplemental judgments of contempt were entered by *Robert W. Langlois,* J., on October 28, 1999; November 2, 1999; and November 22, 1999, respectively.

*Margaret B. Drew* for the plaintiff.

*Daniel Coppinger,* pro se, submitted a brief.

Trainor, J. Janice Coppinger (wife) appeals a Probate Court contempt judgment which, in effect, reduced the amount of weekly alimony owed to her by Daniel Coppinger (husband) pursuant to their divorce judgment, and which awarded her substantially less in attorney's fees than she had requested. Because the judge failed to make the findings necessary to sup-

port modification of the husband's alimony obligation, we vacate that portion of the contempt judgment and reinstate the husband's prior obligation. We also remand for reconsideration and entry of findings concerning the attorney's fees award.

1. *Facts and procedural history.* The parties were divorced in 1982 after twenty-two years of marriage. Their "Stipulation and Agreement," which was incorporated into and survived the divorce judgment, required the husband to pay $275 per week to the wife as undifferentiated alimony and child support until the emancipation of their daughter in August of 1987, and thereafter $200 to the wife as alimony.

On August 23, 1996, the wife filed a complaint for contempt alleging a shortfall and then a cessation of alimony payments. On January 16, 1997, the husband filed a complaint for modification, seeking to terminate alimony on the basis of financial and medical problems. After trial in July of 1998, a Probate Court judge dismissed the husband's complaint for modification, finding that he had failed to establish circumstances warranting a termination of alimony. By judgment dated July 31, 1998, the court set the alimony arrears at $46,400, and ordered the husband to resume payments of $200 per week immediately, with additional payments of $25 per week toward the arrears beginning January 1, 1999, for a total of $225 per week. The court further ordered him to pay $2,200 in fees to the wife's attorney.

On March 12, 1999, the wife filed a second complaint for contempt alleging further alimony arrears and failure to pay the attorney's fees. The same Probate Court judge who had entered the July 31, 1998, judgment issued a judgment of contempt on September 9, 1999, establishing further arrears of $9,948 as of July 31, 1999, and incorporating a stipulation which bound the husband to continue paying $200 per week in current alimony, plus $25 per week toward the arrears.[1]

A compliance hearing was held on October 28, 1999, with both parties and their attorneys present. A second judge of the

---

[1] The stipulation acknowledged partial payment of the $9,948 and obliged the defendant to pay the balance by October 28, 1999. The stipulation did not state whether the $2,200 attorney's fees had been paid, but the wife did reserve the right to seek attorney's fees incurred after May 3, 1999.

Probate Court questioned the husband concerning his income and expenses. The husband testified that he had been evicted from his apartment and was living at his office; that he continued to have health problems; that he was seeking a buyer for his business; and that he was not looking for employment. He further testified that the business continued to pay his automobile insurance, health insurance, and life insurance expenses, as well as the electricity bill and the telephone bill. The wife's attorney represented that the wife continued to have back problems and was receiving weekly therapy. The parties agreed that the husband had paid $6,000 to the wife since the March hearing, but that he had paid nothing since September 9, 1999, because, as he explained, he "[did]n't have any money." The second judge apparently did not find this credible. He sentenced the husband to 120 days in a house of correction, to be served on weekends, with additional time to be spent in community service several evenings per week. At the close of the hearing, the second judge stated, "I am not in any manner forgiving or amending the $200 a week support order, sir. [The first judge] didn't amend it, sir, and there is nothing pending before me that would." A judgment of contempt was issued that day fixing the alimony arrears at $53,248 (an amount stipulated to by the parties) and stating the terms of the husband's incarceration.

A supplemental judgment of contempt dated November 2, 1999, provided that the husband would serve two evenings each week, from 4:30 P.M. to 6:30 P.M., at a facility providing meals to the homeless. This judgment also modified the husband's alimony obligation as follows:

> "Commencing forthwith, given the nature of the sentence imposed which will, to a degree, inhibit the defendant in his work, the defendant shall pay to the plaintiff the sum of $150.00 per week, of which $100.00 shall be considered as alimony (which is herein being modified on a temporary basis) and $50.00 shall be applied toward arrear[s]. The within order shall be reviewed on February 24, 2000."

The wife was awarded attorney's fees in the amount of $800, and a review hearing was set for November 22, 1999. On that date, an amended supplemental judgment of contempt issued, suspending the husband's jail sentence conditioned upon his

serving an additional evening (4:30 P.M. to 6:30 P.M.) of community service each week; setting several compliance hearing dates; and stating that all other terms and conditions of the November 2, 1999, judgment remained in effect.

2. *Modification of alimony.* The wife correctly asserts that the supplemental judgment of contempt had the effect of reducing the husband's alimony obligation from $200 to $100 per week. Although he was obliged to pay $150 per week, $50 of this amount was applied to arrears, and the court made no provision that the $100 shortfall per week would be added to the arrears.

The wife argues on appeal that the court erred in reducing the husband's alimony obligation where no complaint for modification was pending and no notice or hearing on the issue of modification occurred. She further argues that the court erred in reducing the alimony obligation of a surviving divorce agreement when the husband failed to meet the standard required for such modification.

When an agreement is incorporated into a divorce judgment but survives it and retains its force as an independent contract, "something more than a 'material change of circumstances' must be shown before a judge of the Probate Court is justified in refusing specific enforcement of that agreement." *Stansel* v. *Stansel*, 385 Mass. 510, 515 (1982). See *Larson* v. *Larson*, 37 Mass. App. Ct. 106, 108 (1994); *Cournoyer* v. *Cournoyer*, 40 Mass. App. Ct. 302, 305 (1996). With respect to an agreement addressing interspousal support, " 'something more' has been characterized as 'countervailing equities,' such as [when] one spouse 'is or will become a public charge'; [when] there has been failure to comply with the agreement; or [when] there are equally compelling reasons." *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 235-236 (1987), citing *Knox* v. *Remick*, 371 Mass. 433, 436-437 (1976), and *Stansel* v. *Stansel*, 385 Mass. at 515-516. "The rationale for the more stringent standard is manifest: '[a] policy of enforcement supports finality and predictability, allows the parties to engage in future planning, and avoids recurrent litigation in the highly emotional area of divorce law.' " *Broome* v. *Broome*, 43 Mass. App. Ct. 539, 544 (1997), quoting from *Ames* v. *Perry*, 406 Mass. 236, 240-241 (1989).

In this case, the judge made no findings reflecting a demonstration by the husband of "something more" than a "material change in circumstances" or "countervailing equities," and the record lacks evidence that would support such findings.[2] Contrast *Cournoyer* v. *Cournoyer*, 40 Mass. App. Ct. at 306-307 (termination of alimony obligation warranted where wife failed to comply with provisions of agreement, and where numerous other conditions had arisen since entry of previous judgment, including assumption of child custody by husband and achievement of self-sustaining status by wife).

In determining whether "something more than a material change" in the parties' circumstances has occurred, the Probate Court must weigh "all relevant circumstances" and enter findings accordingly. See *Parrish* v. *Parrish*, 30 Mass. App. Ct. 78, 89 (1991). Resolution of the various factors involved in a modification rests with the judge's sound discretion, and we defer to the judge's evaluation of the evidence "[u]nless there is no basis in the record for the judge's decision." *Bush* v. *Bush*, 402 Mass. 406, 411 (1988). In this case, the record contains no evidence that would support reduction of the husband's alimony obligation, and the judge made no findings demonstrating consideration of "all relevant circumstances." Accordingly, we must reverse the modification judgment.[3] See *Parrish* v. *Parrish*, 30 Mass. App. Ct. at 88-89 (modification judgment reversed where findings were "fatally deficient"; no findings made as to needs or requirements of wife and children, or effect of modification on them). Contrast *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 366-367 (1985) (modification judgment upheld where "detailed findings of the judge [were] more than sufficient to establish the material change in circumstances").

3. *Attorney's fees.* At the October 28, 1999, hearing, the

[2]In the specific circumstances of this case, the statement in the November 2, 1999, supplemental judgment of contempt that "the nature of the sentence imposed . . . will, to a degree, inhibit the defendant in his work" does not establish "countervailing equities." To the extent that this statement can be construed as a finding, it also does not appear to be otherwise supported by the evidence.

[3]We therefore need not address the wife's claim that the judge inappropriately modified the alimony award in the context of a contempt proceeding, when no petition for modification was pending and the husband had not sought to raise the modification claim by motion or otherwise.

wife's attorney requested $1,800 in fees incurred "since May." In an affidavit dated September 9, 1999 (and presumably before the court at the October 28 hearing), the wife's attorney stated that $1,100 had been incurred since May 3, 1999, reflecting five and one-half hours at a rate of $200 per hour. There was no challenge to this amount by the husband or further discussion of the issue at the hearing, and the judge made no ruling at that time. In the supplemental judgment of contempt dated November 2, 1999, the judge awarded $800 in attorney's fees. On appeal, the wife requests that this award be increased to $1,800, reflecting the $1,100 figure above and additional time spent in court on October 28.[4]

General Laws c. 215, § 34A, creates a presumption in favor of an award of reasonable fees and costs for a successful plaintiff in a contempt action.[5] *Kennedy* v. *Kennedy*, 23 Mass. App. Ct. 176, 180-181 & n.3 (1986), *S.C.*, 400 Mass. 272 (1987). *Bisienere* v. *Buccino*, 36 Mass. App. Ct. 749, 753 (1994). This presumption "can be overcome only by specific findings supporting a reduction in a request for reasonable fees." *T.M.* v. *L.H.*, 50 Mass. App. Ct. 856, 863 (2001), quoting from *Kennedy* v. *Kennedy*, 23 Mass. App. Ct. at 181. As the judge made no findings explaining the basis for the reduced award, we remand for reconsideration of the issue and entry of the required findings. See *T.M.* v. *L.H.*, 50 Mass. App. Ct. at 863-864.

Paragraph six of the supplemental judgment of contempt dated November 2, 1999, is vacated. The judgment of contempt dated September 9, 1999, incorporating the stipulation obliging the husband to pay $200 per week "for current alimony" plus $25 per week toward arrears, is reinstated. The case is remanded for reconsideration and entry of findings concerning the award

---

[4]There is no documentation in the record addressing this additional time and expense.

[5]General Laws c. 215, § 34A, provides, in relevant part: "In entering a judgment of contempt for failure to comply with an order or judgment for monetary payment, there shall be a presumption that the plaintiff is entitled to receive from the defendant, in addition to the judgment on monetary arrears, all of his reasonable attorney's fees and expenses relating to the attempted resolution, initiation and prosecution of the complaint for contempt. The contempt judgment so entered shall include reasonable attorney's fees and expenses unless the probate judge enters specific findings that such attorney's fees and expenses shall not be paid by the defendant."

of attorney's fees to the wife, and recalculation of the alimony arrears to reflect reinstatement of the September 9, 1999, judgment; the judge may hold such hearings as he deems appropriate.

*So ordered.*