NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-831

J.M.

vs.

A.M.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal arises from two contempt complaints filed by the wife following the entry of a 2018 amended judgment of divorce.  The wife's complaints alleged, in pertinent part, that the husband violated the amended judgment by not maintaining his health insurance coverage for the wife and their child and by failing to provide the wife with a portion of the proceeds derived from certain stock options.  On June 8, 2020, a judge of the Probate and Family Court (contempt judge) issued a partial judgment finding that the husband was not in contempt on the health insurance issue.  The wife moved to amend that judgment, but her motion was denied, in an order dated November 12, 2021. Also in 2021, the contempt judge issued a supplemental amended

judgment finding that the husband was not in contempt on the stock option issue and awarding the wife $5,000 in attorney's fees and costs pursuant to G. L. c. 215, § 34A.[1]  The wife argues that the contempt judge abused her discretion by not finding the husband guilty of contempt as to both issues and by awarding the wife only a portion of her fees and costs.  We affirm the partial judgment dated June 8, 2020; the order dated November 12, 2021, denying the wife's motion to amend the partial judgment; and the supplemental amended judgment entered on April 13, 2023, nunc pro tunc to February 12, 2021.

Background.  Where, as here, the husband argues that the chronology in this matter is dispositive, we first lay out the events leading to the entry of the amended judgment that underlie the wife's contempt complaints, before summarizing the background facts relating to each of the wife's claims on appeal.

The parties were married in 2004.  Divorce proceedings began in 2013.  In 2014, the husband was granted the option to purchase 250,000 shares of stock in the company where he was employed, subject to a vesting schedule.  A trial on the parties' divorce and multiple contempt actions began in June

---

[1] The contempt judge awarded the wife a portion of her attorney's fees and costs because she prevailed on another allegation of contempt not related to this appeal.

2

2015.  In or around the fall of 2016, while the divorce trial was ongoing, the husband's position within the company was eliminated and he was terminated.  He negotiated a severance agreement to address various issues including the continuation of his health insurance coverage and the disposition of his stock options, which would otherwise stop vesting and expire because of his termination.  In early 2017, the husband redeemed some stock options and converted others to shares for the parties' children, although the wife did not learn this until after the divorce trial.  The divorce trial concluded in December 2017.  Ultimately, the husband's health insurance lapsed in March 2018, after it had been extended by some combination of his severance agreement and COBRA.

On July 6, 2018, the judge who presided over the trial (divorce judge) issued a judgment of divorce nisi, nunc pro tunc to December 20, 2017, along with separate findings of fact, conclusions of law, and rationale.  Also in July 2018, following the original judgment of divorce, the wife filed (1) a motion to amend the original judgment and (2) a contempt complaint, each seeking relief relating to the husband's maintenance of health insurance coverage, among other requests.  In an undocketed judgment dated August 15, 2018, the contempt judge concluded that the husband was "not guilty of contempt for failure to maintain health insurance" because "he did not have health

insurance at the time of the divorce and does not have health insurance now."

On October 19, 2018, the divorce judge issued an amended judgment, nunc pro tunc to December 20, 2017; and, in a separate document, over 100 pages of amended findings of fact, conclusions of law, and rationale (findings).  The wife filed several contempt complaints after the entry of the amended judgment, including those relevant to this appeal.  We summarize the background of each relevant allegation of contempt and the award of attorney's fees in turn, before turning to the substance of the wife's claims on appeal.

1.  Health insurance.  Paragraph twenty of the amended judgment provided that the husband "shall maintain his current medical insurance policy covering the unemancipated children and Wife so long as they are eligible to be covered."  On December 19, 2018, the wife filed a contempt complaint (first contempt complaint) alleging that the husband "[f]ail[ed] and refus[ed] to cover the children and Wife on his health insurance, causing the Wife to incur expenses in carrying the children on her health insurance," in violation of paragraph twenty.  A contempt trial was held on various dates from April 2019 to February 2020 addressing this allegation, among others.[2]

_____

[2] Some matters before the contempt judge, including the stock options issue, were segregated for later adjudication

4

On June 8, 2020, the contempt judge issued a partial judgment adjudicating the husband not to be in contempt of paragraph twenty of the amended judgment. The contempt judge found that "[t]his Court already adjudicated . . . the allegation that [the husband] failed to maintain health insurance for [the wife] and the children. [The husband] was found not to be in contempt. The Court therefore declines to address [the wife's] identical allegation."

2. Stock options. The record suggests that there was some ambiguity at the divorce trial about the husband's stock options. The divorce judge's findings state that "[t]here was no credible evidence at trial as to the value of [the husband's] options or to what extent Husband ha[d] exercised some or all" of them. The divorce judge found that, on cross-examination, the husband "denied [that a document presented to him] was evidence of him having exercised some of the options in January 2017," and she was "unable to draw any conclusions from [that] limited exchange." As a result, the divorce judge found that "[t]he value of [the husband's stock] options, if any remain, is unknown." Similarly, the divorce judge found that the husband acknowledged transferring shares to the parties' children "in contravention of the automatic restraining order" imposed by

---

pursuant to the appointment of a special master to address substantive and discovery disputes.

5

Rule 411 (a) (1) of the Supplemental Rules of the Probate and Family Court, but the findings do not state whether these shares arose from the options. The divorce judge found "no credible evidence that if Husband had not transferred the shares to the children, he would retain the shares or be able to exercise them at a later point in time." As to the disposition of the stock options, the findings state that

"an equitable division of the assets results in an equal division of assets, with the exception of two assets that post-date the parties' separation: Wife's 401k and Husband's [company] stock options granted in 2014, if any remain. These two assets will be treated such that the spouse in whose name the asset stands will receive 65% of the value, and the other spouse will receive 35% of the value."

The amended judgment provides,

"In 2014, Husband was granted an option to purchase 250,000 [company] shares at a cost of $2.96 per share subject to a vesting schedule, with 5,208.33 units vesting each month between August 15, 2014 and August 15, 2017. Husband's ability to exercise the options expires on August 24, 2024. The 250,000 shares are divided equally. Husband shall exercise the options on or before August 24, 2024. Any proceeds from the options shall be divided when they are exercised. When Husband exercises any of these options, within ten business days of doing so, he shall notify Wife, provide her with all documentation related to the exercise of the options, and transfer to her her one half share of the post-tax amount or value Husband received, after subtraction of any funds Husband was required to spend in order to exercise the options."

In contrast to the disposition set forth in the findings -- "any remain[ing]" stock options shall be divided with the wife receiving around one-third of their value -- this paragraph of

6

the amended judgment (thirty-two) provides for an equal division of all of the stock options that the husband was granted in 2014, without contemplating that some or all of the stock options might no longer exist.  Relying on the language of the amended judgment, the wife alleged in a contempt complaint filed in January 2019 and amended in July 2019 and January 2021 (second contempt complaint) that the husband was in contempt of paragraph thirty-two because he failed and refused to do the following:  notify the wife of his exercise of the stock options; provide the wife documentation related to the same; and provide the wife with her share of the net value he received from exercising the stock options.  On January 29, 2021, the contempt judge held a trial on the second contempt complaint and other issues not resolved by the prior, partial judgment.  The contempt judge issued a supplemental judgment and a separate memorandum of decision on February 12, 2021, and an amended supplemental judgment on April 13, 2023, nunc pro tunc to February 12, 2021, deciding the issue of the stock options.

The contempt judge found that "[t]here was no evidence presented during the divorce trial to enable the trial judge to determine whether Husband had exercised any [company] options" at the time of the divorce, but that, as of the amended supplemental judgement, the wife "now knows that in January of 2017, while the divorce was pending, Husband exercised some of

7

his [company] options, and that with respect to other options, he did a cashless exchange of the options for [company] shares." The contempt judge reasoned that the husband was not in contempt because the wife did not meet her burden of proving by clear and convincing evidence that the husband "willfully and knowingly disobeyed" the amended judgment, because she sought "funds with interest from transactions dated January 13, 2017, which is almost a year prior to the conclusion of trial, approximately 18 months prior to the date of the original divorce judgment, and almost two years prior to the date of the" amended judgment.

3. Attorney's fees. The wife sought an award of $56,275.70 for attorney's fees and costs, including fees paid to the special master, in connection with the second contempt complaint. The contempt judge found that the wife's counsel was competent and that his hourly rate was reasonable. The contempt judge awarded the wife $5,000, or "approximately 10% of the fees and costs requested," after considering the parties' financial circumstances and that the husband opposed the wife's "legitimate requests for discovery," failed "to provide the accountant's calculations despite a court order requiring him to do so," and "was found not to be in contempt on most of the allegations" raised by the wife.[3]

---

[3] The contempt judge adjudged the husband to be in contempt regarding the division of proceeds from the sale of 100,100

Discussion. 1. Contempt. "We review the judge's ultimate finding of contempt for abuse of discretion, but we review underlying conclusions of law de novo and underlying findings of fact for clear error" (citation omitted). Jones v. Jones, 101 Mass. App. Ct. 673, 688 (2022). "To prove civil contempt a plaintiff must show two elements: there must be (1) clear disobedience of (2) a clear and unequivocal command." Smith v. Smith, 93 Mass App. Ct. 361, 363 (2018). "The command must be clear and unequivocal to the extent that it can be understood by the person subject to it 'without resort to the evidence at trial.' An ambiguity does not arise merely because an order, otherwise clear, may require 'some legal interpretation.'" (citations omitted). Stabile v. Stabile, 55 Mass. App. Ct. 724, 726 (2002). Here, the wife had the burden of proving the husband's contempts by clear and convincing evidence, considering the totality of the circumstances. See Smith, supra.

a. Health insurance. The wife argues that the contempt judge incorrectly relied on res judicata when she declined to find the husband guilty of contempt for his failure to maintain

other shares in the company, not related to the options at issue on appeal. She ordered relief without a finding of contempt regarding the management of the parties' children's Uniform Transfers to Minors Act (UTMA) accounts and the distribution of income from another entity.

9

health insurance.  The wife argues that an undocketed judgment is not subject to appellate review and therefore cannot be given preclusive effect.  The wife also argues that reliance on the undocketed judgment is improper where it contained a mistake of fact in finding that the husband "did not have health insurance at the time of the divorce."  This contention has some heft.  Although the original and amended judgments of divorce were entered on July 2, 2018, and October 19, 2018, respectively -- notably, after the husband's health insurance had lapsed in March 2018 -- they were dated "as of December 20, 2017," when his health insurance remained in effect.

In Piwowarcyzk v. Piwowarczyk, 95 Mass. App. Ct. 757, 759 (2019), this court analyzed the construction of a similar health insurance provision and held that the bound party, the wife in that case, was "not obligated to maintain health insurance for the husband if she is not working or has no access to health insurance through her employment."  The court went on, "if the wife has no access to health insurance, there is no 'plan' and the husband therefore cannot be 'eligible under the plan.'"  Id. The same reasoning applies here.  The language of paragraph twenty provides that the husband shall "maintain" his "current" health insurance policy for "so long as" the parties' children and the wife "are eligible to be covered."  Because the husband's health insurance lapsed due to a change in his

10

employment, the husband was not in contempt because there was no "'clear and unequivocal command' that the [husband] maintain health insurance for the [wife and children] even where [he] has no access to health insurance through [his] employment." Id. at 760, quoting Birchall, petitioner, 454 Mass. 837, 853 (2009).[4]

We need not reach the merits of the wife's arguments regarding res judicata or the alleged erroneous finding in the undocketed judgment. "[O]n appeal, we may consider any ground apparent on the record that supports the result reached in the lower court." Gabbidon v. King, 414 Mass. 685, 686 (1993). Because other grounds support the partial judgment, we affirm.

b. Stock options. The wife argues that paragraph thirty-two of the amended judgment is clear and unequivocal that the husband's stock options and all net proceeds from those options were to be divided equally, and that the lack of payment to the wife of those proceeds was a willful violation of the amended judgment for which the husband should be found guilty of contempt. The husband argues that paragraph thirty-two was

---

[4] The wife correctly points out that the husband's child support obligation was based in part on crediting the husband with health insurance payments. We note that although the husband could not be found in contempt for the lapse in his health insurance, the contempt judge was not prevented from ordering that the husband nonetheless must obtain health insurance to cover the wife and the parties' children. See Piwowarczyk, supra at 761. Nor is the wife prevented from seeking a modification of the child support order. See Morales v. Morales, 464 Mass. 507, 511 (2013).

11

limited to stock options remaining at the time of the divorce, and that he therefore cannot be in contempt for retaining proceeds that arose from such options before the conclusion of the divorce trial. He further argues that he cannot be in contempt because his relevant conduct took place before the divorce decree existed. The contempt judge agreed with this analysis, finding that the wife did not prove by clear and convincing evidence that the husband "willfully and knowingly disobeyed" the amended judgment, because the wife sought "funds with interest from transactions dated . . . prior to" the trial and both the original and amended judgments.

The contempt judge did not address directly whether the husband's failure, after the amended judgment entered, to "notify Wife, provide her with all documentation related to the exercise of the options, and transfer to her her one half share of the post-tax amount or value Husband received, after subtraction of any funds Husband was required to spend in order to exercise the options," was contemptuous. However, it may be inferred from the contempt judge's reasoning that she found that the amended judgment did not clearly and unequivocally require division of proceeds from transactions which took place before the divorce. We agree.

The amended judgment described the 250,000 stock options and divided them equally. Yet, these stock options did not

12

exist in that form at the time of the amended judgment. In dividing assets in a divorce action, a judge is limited "to the property owned by the parties at the time of the divorce." Heins v. Ledis, 422 Mass. 477, 484 (1996). As such, while the language of paragraph thirty-two does not directly state that it only applies to stock options that remain at the time of divorce, it can be read to include such a limitation.

Such a reading is consistent with, but not dependent on, the findings, which contemplate the division of the stock options "if any remain," and acknowledge the absence of credible evidence at trial as to whether the husband had "exercised some or all of the options as of the conclusion of trial." This reading is also consistent with the forward-looking language of paragraph thirty-two, that "[w]hen Husband exercises any of these options" he shall provide the wife with notice, documents, and her share of "[a]ny proceeds." The contempt judge did not abuse her discretion by declining to find the husband in contempt.

2. Fees and costs. We review an award of fees and costs for abuse of discretion. See Tatar v. Schuker, 70 Mass. App. Ct. 436, 450-451 (2007). "General Laws c. 215, § 34A, creates a presumption in favor of an award of reasonable fees and costs for a successful plaintiff in a contempt action. This presumption 'can be overcome only by specific findings

13

supporting a reduction in a request for reasonable fees.'"
(citations omitted).  <u>Coppinger</u> v. <u>Coppinger</u>, 57 Mass. App. Ct.
709, 714 (2003).

The wife argues that the contempt judge abused her discretion by awarding only $5,000 in costs and fees when the wife requested $56,275.70.  We disagree.  In so limiting the wife's recovery, the contempt judge properly considered many factors, including the husband's obstructionist conduct in opposing the wife's legitimate requests for discovery and the fact that the husband "was found not to be in contempt on most of the allegations" raised by the wife.  Although a more precise evaluation of the wife's request may have been possible, we do not conclude that the contempt judge abused her discretion by awarding "approximately 10% of the fees and costs requested,"

where she explained the basis for the reduced award.  See

Coppinger, 57 Mass. App. Ct. at 714.[5]

        Partial judgment dated June
          8, 2020, affirmed.

        Order dated November 12,
          2021, denying the wife's
          motion to amend the partial
          judgment, affirmed.

        Supplemental amended judgment
          dated April 13, 2023, nunc
          pro tunc to February 12,
          2021, affirmed.

        By the Court (Singh,
          D'Angelo & Hodgens, JJ.[6]),

        Clerk

Entered:  July 15, 2025.

---

[5] The husband's request for appellate attorney's fees and costs is denied.

[6] The panelists are listed in order of seniority.